EUGENE J. TOOMEY *vs.* MICHAEL DONOVAN & another.

Essex.    November 2, 1892. — March 2, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Negligence — Employers' Liability Act — Evidence — Assumption of Risk by Employee.*

In an action for personal injuries by A. against B., it appeared in evidence that B. had an arrangement with C. by which C. had charge of a room in B.'s factory in which room A. was at work. C. hired and paid the men, and B. paid C. so much a case for fitting the stock. B. furnished the machinery, including the machine on which A. was injured, power, and everything except labor, and, as B. testified, looked out for the room, though he did not explain the phrase. If the stock was not fit C. informed B., and B. testified that C. had full charge and assumed the responsibility. Whether B. exercised supervision over the work was not clear. He was often about the room and kept the machinery in repair through one D., B. testifying that the arrangement was that he should pay for the repairs, and that C. had the right, if repairs were needed, to go to D. and get a man, and had done so several times; that he himself had given orders to do so, and had sent out to have some of the machines repaired after something that C. had told him; that he relied on C. to examine the machinery; that he had the right to inspect the machine himself, and was often in the room; and that he never hired anybody to clean the machines, but supposed C. would do it, though he

had no agreement with him. B. also spoke of C. as his foreman. C. testified that he was to look after the machines and have them repaired, but was doubtful whether or not at B.'s expense, and that he had usually notified B. of what was needed, but did not expect B. to inspect the machines as a part of the arrangement. The judge directed a verdict for B. *Held*, that A. should have been allowed to go to the jury, both on the count at common law and the count under the St. of 1887, c. 270, § 4.

The inference from the St. of 1887, c. 270, § 4, plainly is, that the employer shall be liable when a contractor does part of his work and an employee of the contractor is injured by reason of a defect in the condition of the ways, works, machinery, or plant furnished by the employer to the contractor which has not been discovered or remedied through the negligence of the employer, or of some person intrusted by him with the duty of seeing that they were in proper condition. By the negligence of the employer is meant his own negligence, in distinction from that of his servant or superintendent, which is included in the latter part of the same sentence in which the negligence of the employer is spoken of.

In an action for personal injuries it appeared in evidence that for a part of three years before the accident the plaintiff had worked upon a machine like that upon which he was injured; that he was twenty-five years old at the time and of ordinary intelligence; and that he knew that there was no automatic guard on the machine and no way of preventing the head block from coming down if the machine was out of order. *Held*, that, having assumed the risk of operating the machine without a guard, the plaintiff could not now claim that one should have been put on.

MORTON, J. The plaintiff contends that there was evidence tending to show that the defendants were liable at common law, and also under § 4 of the employer's liability act, St. of 1887, c. 270.

The defendants concede that the jury would have been warranted in finding that the plaintiff was in the exercise of due care, and that the machine was out of repair ; but they insist that at common law there was no evidence tending to show that they were under any obligation to keep the machine in repair, or that they owed any duty to the plaintiff in that regard, and that under § 4 of the employers' liability act there was no evidence to show that its condition was due to their negligence, or that of any person intrusted by them with the duty of seeing that it was kept in repair.

Their contention at common law implies, and we think rightly, that, if they were bound to keep the machine in repair, the defect was of a sort to render them liable to the plaintiff, if they owed any duty to him to keep the machine in repair.

The defendants did not hire the plaintiff, and, we assume, had no authority to discharge him. He was at work in a room in

their factory which was used for the stock fitting department. The defendants had an arrangement with one David W. Toomey by which he had charge of this room. Toomey hired and paid the men, and the defendants paid him so much a case for fitting the stock. They furnished all the machinery, including the machine on which the plaintiff was injured, knives, grooves, stamps, stock, power, and everything except labor, and, as one of them testified, looked out for the room, though he did not explain what he meant by that phrase. If the stock was not fit, Toomey informed the defendants; and one of them testified that Toomey had full charge of that department, and took the responsibility off his hands. Whether the defendants exercised any supervision over the work in the course of its manufacture is not clear. There was testimony that they were " about the room very often, sometimes most every day, sometimes three or four times a day, and sometimes . . . not for three or four days." On direct examination one of the defendants, called as a witness by the plaintiff, testified that they kept the machinery in repair, or, as he explained, " so that it would be all right to do the work in every way, shape, and manner." The witness said, in answer to an inquiry as to whom he employed to keep it in repair, " No one in particular," and then immediately added, " M. V. Bresnahan." On cross-examination he said that the arrangement was nothing more than an agreement that they should pay for the repairs, and that Toomey had the right, if there was any necessity to have any machine repaired, to go to Bresnahan and get a man, and had done so several times; that he himself had ordered them to do so, and had sent out to have some of the machines repaired after something that Toomey had told him; that he relied entirely on Toomey to examine the machinery; that he had the right and opportunity to inspect this machine himself, and was often in the room; and that he never hired anybody to clean the machines, but supposed Toomey would do it, though he had no agreement with him. The witness also, in the course of his testimony, spoke of Toomey as their foreman.

Toomey testified that it was his duty to look after the machines and have them repaired, and that he was the person who was to look out for defects; but he was not sure that

he had power to have them repaired at the expense of the defendants without notice to them. He had usually notified the defendants of what was needed, and did not expect them to inspect the machines as a part of the arrangement with him.

It manifestly would have been competent, on this testimony, for the jury to find that the defendants were bound to keep the machines in repair; that Toomey, in what he did as to repairs, was acting for them; and that, under the arrangement between him and them, they contemplated that the machines would be operated by workmen employed by him. Under such circumstances, the defendants would owe to those employed on the machines the duty of exercising reasonable care to keep them in such a condition that they could be operated safely. If they engaged with Toomey to keep them in repair for use by his workmen, they would be liable to any one employed upon them by him who, being himself in the exercise of due care, was injured in consequence of their neglect to repair them. The liability of the defendants to the plaintiff would not depend on or arise out of any contract with him, but on their neglect of a duty which they had undertaken towards him in common with the other workmen employed by Toomey. It is not necessary to consider whether there would be any ground for holding the defendants liable if they had merely furnished the machines, and if there was no evidence that would warrant a jury in finding that they contemplated the use of them by workmen employed by Toomey, and had agreed to keep them in repair. It may be that Toomey also would be liable to the plaintiff; but neither that fact, nor the fact that Toomey might be liable to the defendants for breach of his agreement (if he did agree) to notify them when the machines needed repairing, would relieve the defendants from liability to the plaintiff for injury resulting to him from neglect by them of a duty which they owed to him. *Curley* v. *Harris*, 11 Allen, 112. *Kimball* v. *Cushman*, 103 Mass. 194. *Gray* v. *Boston Gas Light Co.* 114 Mass. 149. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. *Bickford* v. *Richards*, 154 Mass. 163. *Heaven* v. *Pender*, 11 Q. B. D. 503. *Elliott* v. *Hall*, 15 Q. B. D. 315. *Smith* v. *London & St. Katharine Docks Co.* L. R. 3 C. P. 326. We think, therefore, that the plaintiff should have been allowed to go to the jury on the common law

count.   The plaintiff also contends that he should have been allowed to go to the jury on the count under § 4 of the employers' liability act, and it is necessary to consider that question.

The purpose of that section evidently was to enlarge the liability of the employer; otherwise, it is meaningless.   The inference from the section plainly is that the employer should be liable when a contractor does part of his work and an employee of the contractor is injured by reason of a defect in the condition of the ways, works, machinery, or plant furnished by the employer to the contractor, which has not been discovered or remedied through the negligence of the employer, or of some person intrusted by him with the duty of seeing that they were in proper condition.   If, therefore, there was a relation of employer and contractor, as appears to have been the case between the defendants and Toomey, as to any part of the former's work, and the plaintiff was injured by reason of a defect in any of the machinery furnished by them to Toomey for such work which arose from, or had not been discovered or remedied through, their negligence or that of some one intrusted by them with the duty of seeing that it was in proper condition, then the defendants would be liable.   By the negligence of the employer, we understand to be intended his own negligence, in distinction from that of his servant or superintendent, which is included in the latter part of the same sentence in which the negligence of the employee is spoken of.   There was evidence that the defendants were bound to keep the machine in repair, and that they had the right and opportunity to inspect it, and were frequently in the room where it was.   Whether the want of repair was due in any respect to their own negligence was, we think, under the circumstances, a question for the jury. We cannot say that a jury would not be justified in finding that they should have examined the machine themselves, in the exercise of reasonable care.   It has already appeared that there was evidence which would have warranted the jury in finding that Toomey was intrusted by the defendants with the duty of seeing that the machine was in proper condition.   The fact that he also occupied towards them the relation of a contractor would not relieve the defendants from liability for his negligence in seeing that the machine was in proper condition.

One person may sustain different relations to another, as well as different relations to different persons.  Whether the want of repair was due to any negligence on the part of Toomey was also, we think, a question for the jury, and the plaintiff should have been allowed to go to the jury on the question of the liability of the defendants under § 4 of the employers' liability act.

The remaining question relates to the admissibility of certain testimony offered by the plaintiff, tending to show that for a long time prior to the accident automatic guards had been in use upon such machines, for the purpose of preventing the head block from coming down in case there was any defect in the machine, and that the defendants knew of such guards, and the plaintiff did not know of them.  This testimony was excluded by the court, and we think rightly.  For a part of three years prior to the accident, the plaintiff had worked upon a machine like that upon which he was injured.  He was twenty-five years old at the time of the accident, and, for aught that appears, was of ordinary intelligence.  He knew that there was no guard on the machine, and no way of preventing the head from coming down if the machine was out of order.  The fact that there was no guard was an obvious one; and, in working on the machine, he must be held to have assumed the risk resulting from the absence of a guard.  Whether he did or did not know that automatic guards were in use on such machines was immaterial.  He agreed to work on the machine as it was, and the defendants owed no duty to him to put on the guard.  Having assumed the risk of operating the machine without a guard, the plaintiff cannot now claim that one should have been put on.  *Pingree* v. *Leyland,* 135 Mass. 398.  *Moulton* v. *Gage,* 138 Mass. 390.

*Exceptions sustained.*

*H. F. Hurlburt & E. T. McCarthy,* for the plaintiff.
*W. H. Moody,* for the defendants.