[S. F. No. 2008.    Department Two.—June 20, 1902.]

## PETER CORLETTI, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

MASTER AND SERVANT—SAFETY OF APPLIANCE—KNOWLEDGE OF SERVANT.
—An action by a servant for injuries suffered in the use of an alleged unsafe appliance cannot be sustained where it appears from the testimony for the plaintiff that the appliance was a simple one, of safe construction, and in perfect order at the time of the injury, and that plaintiff had participated in its construction, and thoroughly knew and appreciated the use and possible risks attending the use thereof, and had been familiar therewith for years.

ID.—DISCHARGE OF MASTER'S DUTY.—The duty of the master to furnish reasonably safe appliances is discharged when he has furnished such appliances as may by ordinary care be used without danger, or with no more danger than is necessarily incident to the character of the work.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

C. W. Cross, for Appellant.

The plaintiff assumed the risk of the use of a reasonably safe appliance, the danger in the use of which was fully known and open to his observation. (Bailey on Personal Injuries Relating to Master and Servant, secs. 8, 57, 58, 62, 106, 209, 211; *Gowen* v. *Hartley,* 56 Fed. Rep., pp. 973-974, 980, 982; *Corcoran* v. *Milwaukee Gas Light Co.,* 81 Wis. 191; *Marsh* v.

*Chickering*, 101 N. Y. 396; *Gulf etc. Ry. Co.* v. *Williams*, 72 Tex. 159.)

A. Morgenthal, and William H. Stackpole, for Respondent.

The judge of the trial court not only saw the model of the dumping-car, but handled the same, and by denying the motion for a new trial found against counsel's contention as to the safety of the appliance. It was a question of fact for the jury and the trial court to decide. (*Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261; *Alexander* v. *Central Lumber & Mill Co.*, 104 Cal. 532; *Mullen* v. *California Horseshoe Co.*, 105 Cal. 77.) It was incumbent on appellant to prove not only that respondent knew, or could have known, the defect or unfitness of the dumping-car, but that respondent knew and appreciated the danger arising from such defect or unfitness. (*Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261; *Colbert* v. *Rankin*, 72 Cal. 197; *Bjorman* v. *Fort Bragg Redwood Co.*, 104 Cal. 626; *Mullin* v. *California Horseshoe Co.*, 105 Cal. 77; *Higgins* v. *Williams*, 114 Cal. 176; *Nofsinger* v. *Goldman*, 122 Cal. 609.)

HENSHAW, J.—Plaintiff sued to recover damages for personal injuries to himself, alleged to have been occasioned through the negligence of defendant. Plaintiff was employed as a laborer to assist in repairing the railway track of defendant in Placer County. While engaged in emptying a dumping-car upon which he was standing, it tilted, throwing him with great violence to the ground, and so fracturing his leg as to necessitate amputation. It is alleged that the injury was occasioned because defendant had knowingly furnished a defective, inadequate, and unsafe dumping-car; that these defects were unknown to plaintiff, and could not have been discovered by him with the use of ordinary care.

The proposition argued upon this appeal is, that the appliance furnished was not defective, inadequate, or unsafe, and that plaintiff had equal means with the defendant of knowing its condition, and a full understanding of any possible risk which he might run in the use of it. The push-car itself, it is not disputed, was one of safe construction, and one with the use of which plaintiff had been familiar for years. Upon this car was placed a simple box, sliding upon gas-pipe rollers, with strips across the bottom of the car to prevent them from

rolling too far, and with handles at the end of the box by which it could be lifted up, thrust forward, and its contents dumped. This appliance was new to plaintiff. The cars had formerly been provided with boxes having removable side-boards. When these were removed the dirt slid and was shoveled off. Upon the day preceding the accident the box had been used upon a smaller and lighter car, and plaintiff was engaged in this employment. It was noticed, however, that the light car tipped when the box was lifted, and the larger push-car was substituted for it. Plaintiff proved himself to be a man of excellent understanding. He produced in court a model of the apparatus, made by himself. His testimony shows that he clearly understood in every detail the nature of the simple appliance about which he was engaged. Moreover, he was a participant in its construction. "The next day, the day of the accident, we took this larger dump-car and put a box onto it, and nailed a strip on the bottom of the push-car, on top of the center of the bottom or platform of the car," he testifies. He then describes the accident and the measurements and construction of the car and dump-box, and proceeds: "When we went to dump the car, after we got to the place where we wanted to unload the dirt, then we would roll the dump-box forward on the rollers until it got to the hooks. Then the hooks would catch the front roller. The hooks would catch in the front roller, and then the men standing on the back end of the car would take hold of the handles at the back end of the dump-box, and lift the back end of the dump-box up and let the dirt slide out in front. At the time of the accident I was standing on the back end of the car, and the car tilted up and I fell off to one side, on the left side. The car had not tilted up at all before that day. I had worked on the same kind of car four years and a half, but I never used that kind of a box on it—no roller. I had unloaded seven or eight loads when I got hurt." Another witness for plaintiff (Avancino) testifies that he had been helping to lift the box before Corletti lifted it. "I stopped lifting the box, and Mr. Corletti commenced to lift it, because he understood it much better than myself. I had been there such a short time, and he was an old hand there, and he understood it better than me." The same witness—and he is the only witness for plaintiff whose testimony bears upon the matter—further

testifies that he ''worked on the car in the same condition continuously after the accident; no change was made in the car; they always put the same load on it; that he worked a week and a half after Corletti got hurt, and the car never tipped any more; that that was the only time; that the car was in perfect order so far as he knew at the time it tipped; the load was handled in the same way as they handled every other load.''

It appears, therefore, from the testimony of the plaintiff himself, that the appliance was a simple one, its construction, its use, and the possible risks attending such use thoroughly appreciated by him. Neither as matter of law nor as matter of fact can it be said that there was the slightest evidence tending to show that the appliance furnished was unsafe or inadequate, or that its use and the possible dangers attending it were not thoroughly understood by the plaintiff. It is clear that plaintiff was not injured because of any structural defect or inadequacy in the appliance. He was engaged in work with which he was thoroughly familiar; he had aided in the construction of the appliance; he had assisted, standing upon the car, in dumping seven or eight loads before the car tilted with him. Even so, the man by his side, engaged in the same occupation, was not injured. It must be concluded, therefore, from the evidence that the appliance was not inadequate or unsafe, that full knowledge of it was possessed by plaintiff, that if there was any liability of tilting he had been forewarned of that by his actual personal experience with the smaller car upon the day preceding. While it is the duty of the employer to furnish reasonably safe appliances, yet when he has furnished such appliances as may by ordinary care be used without danger, or with no more danger than is necessarily incident to the character of the work, he has discharged his duty.

The judgment and order denying a new trial are reversed, and the cause remanded.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.