[Civ. No. 252.    Third Appellate District.—March 18, 1907.]

## ALBERT E. GIACOMINI, Respondent, v. PACIFIC LUMBER COMPANY, Appellant.

NEGLIGENCE—MASTER AND SERVANT—INDEPENDENT CONTRACTOR—QUESTION OF FACT FOR JURY.—In an action by a servant for damages caused by the negligence of defendant as his employer in failing to furnish safe appliances, where there is a dispute whether plaintiff was the servant of the defendant or of independent contractors, and it appears that plaintiff was paid by defendant, and the evidence is such that the existence of the relation of independent contractors is in doubt, its existence is a question of fact for the jury, and a verdict for the plaintiff will not be disturbed upon appeal.

ID.—INSTRUCTION SUBMITTING QUESTION OF FACT—DETAIL OF EVIDENCE.—Where the court, in submitting to the jury the question of

fact whether the persons claimed to be independent contractors were
such or mere servants of the defendant, properly instructed them
as to the law of the case, though it may have been unnecessary to
detail the evidence, the action of the court in calling attention
particularly to the evidence which must be the basis of the jury's
finding cannot be successfully assailed.

ID.—UNSAFE APPLIANCE—EVIDENCE OF NEGLIGENCE—SUPPORT OF VER-
DICT.—Where the evidence shows that the machine on which plain-
tiff was injured was originally unsafe, and that an appliance was
put thereon to make it less dangerous, in respect to which the master
was negligent in failing in his duty to keep it secure, or to inspect
the machine and appliance, and in failing to warn plaintiff, who,
in ignorance of the manner in which it was fastened, was requested
by an inexperienced workman to adjust the loosened appliance,
to his injury, the evidence of negligence is sufficient to support the
verdict for damages.

APPEAL from a judgment of the Superior Court of Hum-
boldt County, and from an order denying a new trial. G.
W. Hunter, Judge.

The facts are stated in the opinion of the court.

Gillett & Cutler, and D. Servier, for Appellant.

Mahan & Mahan, and Coonan & Kehoe, for Respondent.

BURNETT, J.—A jury awarded respondent the sum of
$3,500 as damages for injuries received in a shingle-mill be-
longing to appellant. The appeal is from the judgment and
order denying the motion for a new trial.

The complaint alleges that "on the twelfth day of De-
cember, 1900, and for some time prior thereto, said plain-
tiff was employed by defendant in the capacity of shingle
sawyer at one of said machines (a hand-shingle machine) so
known and designated as machine No. 3, with instructions to
attend to the setting of the screws of said other hand-shingle
machines when the same were being operated by inexperienced
men.

"That on said twelfth day of December, 1900, and for
some time prior thereto, said machine known and designated
as machine No. 2 was in a defective and dangerous condition,
in this, that on the frame of the carriage of said machine,
and on the side nearest the saw was fastened at the time of

the accident hereinafter described, an appliance, used to prevent spalts from coming in contact with the saw.'' Then follows a description of said appliance and the manner in which it was fastened to said machine, and an allegation that it was so insecurely fastened as to render the machine ''defective, dangerous and unsafe to persons engaged in operating or working about said machine,'' and that it had been in such condition for several months to the knowledge of defendant, or that defendant could have known thereof by the exercise of ordinary care and diligence, but ''negligently permitted and suffered the same to be and remain during all of said time in said defective, dangerous and unsafe condition. That on said twelfth day of December, 1900, while said machine was in said defective, dangerous and unsafe condition as aforesaid, it was being operated by an inexperienced man, one Charles Bilderbach, who requested said plaintiff herein to set the screws on said machine, which said screws are used for the purpose of adjusting the table of said machine so that the shingles may be cut of the proper thickness, and while said plaintiff was so engaged in setting the screws on said machine at said time, it became necessary for said plaintiff to push the carriage of said machine back and forth over said rapidly revolving saw, and while doing so the said appliance . . . dropped down at one end and came in contact with said saw and was torn from its place and struck plaintiff,'' inflicting serious injuries.

As usual in cases of this character, there is little controversy as to the law in the abstract, but counsel differ widely as to the effect of the evidence and what particular principles of the law of negligence should be invoked.

1. The appellant earnestly insists, and its main point is, that the evidence shows without conflict that defendant was absolved from all blame for the accident for the all-sufficient reason that plaintiff was not in its employ, but was working for Ansel R. Thompson and Thomas Maddux, who, it is alleged in the answer, ''were engaged in manufacturing shingles in said mill for said defendant under an agreement with defendant that defendant was to furnish the power and machinery and keep the machinery in repair, and said Thompson and Maddux were to receive a specified amount per thousand shingles for manufacturing the same for defendant with said machinery and from material furnished by defendant.''

In other words, it is contended that Thompson and Maddux were "independent contractors," and that the doctrine of *respondeat superior* does not apply to appellant. Respondent claims that the evidence leaves debatable the question whether there was such a contract, and that it therefore became a proper subject of consideration at the hands of the jury; and that this court cannot say that the finding adverse to appellant rests upon unsubstantial support. Does the evidence demand the conclusion that the relation of "master and servant" or employer and employee existed between Thompson and Maddux on the one hand and respondent on the other? If so, the judgment cannot be upheld.

Section 2009, Civil Code, provides that: "A servant is one who is employed to render personal service to his employer otherwise than in the pursuit of an independent calling, and who in such service *remains entirely under the control and direction of the latter* who is called the master." If any addition to the code definition or any elucidation of it were needed, it could be supplied by quotation from many authorities, as the question has been often the subject of judicial cognizance. By this code provision as well as by the decisions it is made clear that in determining whether Thompson and Maddux were independent contractors or fellow-servants with respondents the vital inquiry is, Who had *"entire control and direction"* of respondent in the service he was performing? If there had been a written agreement between appellant and said Thompson and Maddux, or if there were no uncertainty as to the scope and terms of said agreement, a question of law would be presented, but it is insisted by respondent that in view of the evidence, it was a question of fact under proper instructions to be submitted to the jury to determine whether respondent was the employee of one or the other. "Where an alleged contract rests entirely in parol, it is the province and duty of the jury to determine whether there is a contract, and to ascertain and fix its terms, unless these terms are precise and explicit and admit of one construction only." (11 Ency. of Pl. & Pr. 88.) And in aid of the effort to reach a satisfactory conclusion as to whether a party is an independent contractor or a fellow-servant, it is, in the nature of things, impossible to formulate inflexible rules which will cover all conceivable circumstances that may be received in evidence, but there are certain well-

recognized guides of general application that point the way
to a conclusion.  For instance, it has been announced that
an ''independent contractor represents his employer only
as to the results of the work and not as to the means where-
by it is to be accomplished.''  (*Casement* v. *Brown*, 148 U. S.
615, [13 Sup. Ct. Rep. 672].)  Again, ''A contractor for
certain work may at the same time be the servant of the same
employer in regard to other work to be done by him, so as
to render the latter liable for his acts in connection with such
other work.''  (16 Am. & Eng. Ency. of Law, 187.)  Again,
''If the employer has the right of control, it is immaterial
whether he actually exercises it.''  (*Linnehan* v. *Rollins*, 137
Mass. 123, [50 Am. Rep. 287].)  And ''a reservation by
the employer of the right by himself or his agent to super-
vise the work merely to determine whether it is being done
in conformity to the contract does not affect the independ-
ence of the relation'' (*Callan* v. *Bull*, 113 Cal. 593, [45
Pac. 1017]) ; the fact that payment is made ''by the job''
or ''according to the amount of the work done does not make
an employee an independent contractor, though it may be evi-
dence that he is such.''  (16 Ency. of Law, 189.)

But the ultimate standard by which all the evidence must
be measured is that prescribed by the code: Who has the
undisputed and complete control of the servant?  Appellant
in the case at bar answers: Thompson and Maddux.  That
is its interpretation of the evidence, and in so many words
it is so declared by some of the witnesses, but the jury had
a right to consider all the facts and circumstances bearing
upon the relation of the parties, and must it be affirmed, as
a matter of law, that there is no warrant for the finding
that Thompson and Maddux were fellow-servants of respond-
ent within the meaning of the code?  The declarations of cer-
tain witnesses for defendant undoubtedly did not carry con-
viction to the minds of the jury, and there were facts and
circumstances considered more satisfactory and these led to
a different conclusion.

In his opinion denying the motion for a new trial the
learned judge of the lower court recites a large number of
these circumstances, which the jury had the right to con-
sider in determining whether there was any such contract
as claimed by appellant, among which are the following:
The compensation of Thompson and Maddux was subject to

change at any time and was frequently changed by the company. Whatever the agreement, it was for no definite term and could be terminated at any time by either party to it. The company owned the sawmill and the shingle machines, one of the machines being placed in the main part of the building and two in the addition which was built later. The same power ran the main mill and the shingle machines. The company furnished all the machinery, the power, the lights, made all important repairs and furnished all the oil for the machinery. The material to be manufactured into shingles was the refuse from the main mill, carried down to the shingle machines by elevators, the material being taken from the same by the men in the employ of the company. The shingle machines were dependent entirely upon the main mill for material to be manufactured into shingles. Thompson was the principal man in the shingle department, looked after the work, but at times was called into the main mill and worked there when the shingle machines were idle, and when they were running he occasionally filed saws in the big mill, and he filed for the shake machine, and he was paid therefor one dollar a day, which he says he divided with Maddux. Maddux also did some filing in the main mill, and they often worked at various jobs therein when the shingle-mill was idle and the other men in the shingle-mill did the same. One of the shingle sawyers worked for three days in the big shingle-mill up the track for defendant, and at the end of the month he received his wages from the company in the same manner as when he was working all the time in the shingle department of the main mill. If they were short of stock, Thompson and Maddux complained to Howatt, the general foreman of defendant, and if stock was accumulating, Howatt would not permit them to shut down. Howatt passed through the shingle department sometimes two or three times a day and frequently criticised the work of the men and occasionally gave them orders. On one occasion, when Howatt was disabled, Thompson took his place as foreman of the main mill and continued therein for a week or more. On the 15th of each month, when the company paid all its employees, the men in the shingle department lined up at the office precisely the same as the men in its employ did, and were paid at the office window in turn by checks given by the company, or, if the amount was small,

sometimes in cash. However, the evidence for defendant shows that this was charged upon the books of the company to Thompson and Maddux. The latter lined up as the other men at the same time and received their pay in the same manner. The names of all the men were on the pay-roll kept by the company and opposite their names was a statement showing the amount due each for wages during the month and the amount due the company for bills incurred by them at the store or saloon or livery-stable owned by the company. The men in the shingle-mill signed the pay-roll just as the other men did. Mrs. Ferguson, at whose place respondent and others boarded, applied at the office of the company and signed the roll as the others did, and received her pay for food in the same way. On some occasions the company deducted from the pay of the men working in the shingle department the amount due for state and county poll taxes. The assessor had notified the company to keep out for him the money due from the men in its employ for poll taxes, but had never made such a request particularly as to the men working in the shingle department or for Thompson and Maddux.

To show how uncertain the contract was, even in Mr. Thompson's mind, we have in his cross-examination the statement: "I did enter into the contract with Mr. Sinclair alone, and when Mr. Douglas took charge he simply let the contract run along and we acted on it. That is the only contract that we have with the Pacific Lumber Company at the present time, and it was the only contract that we had at the time Giacomini was employed. Mr. Maddux, Mr. Sinclair and myself were the only three present when the last contract was made. We didn't put it in writing. It never had been in writing. We simply manufactured our shingles for so much a thousand. When times got harder and we got our men cheaper they cut us down; then when it got hard to get men we had to come to them to pay more. That is the way the contract ran. We never had it any other way. This contract was subject to change with the varying price of lumber and the varying demand for men. It was understood that the contract could be abrogated on either side at any time. If our work didn't prove satisfactory, they could immediately come in and take their machinery and let us go." He went on further to state that he did not know just when

the contract was made nor what price they were to receive for shingles. And altogether his testimony was so uncertain that it might justly carry very little if any weight with the jury. There was at least sufficient uncertainty to justify the submission to the jury of the question whether there existed between defendant and Thompson and Maddux such a contract as constituted the latter "independent contractors." It cannot be held, we think, that the probative force of the foregoing circumstances indicating the conduct of the parties, considered with the manner and appearance of the witnesses, which cannot be disclosed by the record, is insufficient to justify the verdict.

Among the many cases in the books involving similar questions to those considered herein the following are instructive: *Indiana Iron Co.* v. *Gray,* 19 Ind. App. 565, [48 N. E. 803] ; *Rummel* v. *Dilworth,* 111 Pa. St. 343, [2 Atl. 355] ; *King* v. *New York etc. R. R. Co.,* 66 N. Y. 187, [23 Am. Rep. 37] ; *Klages* v. *Gillette Herzoz Man. Co.,* 86 Minn. 458, [90 N. W. 1116] ; *Gahagan* v. *Aerometer Co.,* 67 Minn. 252, [69 N. W. 914] ; *Rait* v. *New England Furniture & Carpet Co.,* 66 Minn. 76, [68 N. W. 729] ; *New Albany Forge & Rolling Mill* v. *Cooper,* 131 Ind. 363, [30 N. E. 295] ; *Neimeyer* v. *Meyerhauser,* 95 Iowa, 497, [64 N. W. 416] ; *Nyback* v. *Champagne Lumber Co.,* 109 Fed. 732, [48 C. C. A. 632] ; *Carlson* v. *Stockens et al.,* 91 Wis. 432, [65 N. W. 59] ; *Toomey* v. *Donovan,* 158 Mass. 232, [33 N. E. 396] ; *Smith* v. *Belshaw,* 89 Cal. 427, [26 Pac. 834] ; *Callan* v. *Bull, supra; Corletti* v. *Southern Pacific Co.,* 136 Cal. 642, [69 Pac. 422] ; *Shea* v. *Pacific Power Co.,* 145 Cal. 682, [79 Pac. 373].

In the Carlson case, it is held that "when in an action for damages caused by the negligent opening of a dam for the purpose of driving logs, there is evidence that the person in charge of the drive was acting as defendant's agent, and also evidence that he had full control of the drive and dam, and that he employed the men and obtained the supplies, defendants merely paying him for driving their logs, it is for the jury to determine whether such person was an independent contractor or not."

In the Toomey case, as stated in the syllabus: "In an action by a workman in defendant's factory for personal injuries caused by a defective machine, it appeared that under a contract with defendants one T. had charge of the fitting room

in the factory—in whose room plaintiff worked—and hired and paid the men who worked therein and was himself paid by the case for fitting stocks, and that defendants furnished all the machinery and 'looked out' for the room.    There was testimony that they were about the room often; that they kept the machinery so that it would be all right to do the work in any way, shape and manner; that they had to pay for repairs, but T. had the right if there was any necessity for repairs to go to a certain person and have them made; that they relied on T. to examine the machinery and they had repairs made after notice from him; that they had the right and the opportunity to inspect the machinery and they never hired anyone to clean the machines, but supposed T. would attend to that, though they had no agreement to that effect." It was held by the supreme court of Massachusetts that the court should have permitted plaintiff to go to the jury as to the common-law liability of defendants.

It is, of course, not our province to pass upon the weight of the evidence or the credibility of the witnesses, nor are we concerned about the question whether the verdict is just or in accordance with the preponderance of the evidence.    We hold simply that there is substantial support for the verdict and it is therefore binding upon appeal.

2. Another point emphasized by appellant is, that the court erred in giving of its own motion an instruction marked "A." The instruction, which is quite lengthy, defines a servant and an independent contractor and directs the jury that "the question is to be determined by all the evidence bearing upon the point; as to the nature and terms of the contract between the parties, as to the location and situation of the entire mill and machinery," etc., calling attention to the various features of the evidence, "with all the other evidence, facts and circumstances in the case which will aid you in determining the true relation between Thompson and Maddux and the defendant, that is, whether Thompson and Maddux were independent contractors within the law as I have defined it to you, or whether they were the agents or servants of the defendant within the meaning of the law as I have defined that relation to you."    It probably was unnecessary for the court to detail the evidence which was to be considered, as the general direction in reference to all the evidence was ample; but the instruction is correct in its defini-

tion of the relations involved; it does not purport to pass upon the weight or effect of the evidence, and it is not apparent how it could have prejudiced the defendant. As it was proper for the jury to determine whether Thompson and Maddux were independent contractors or were servants of the defendant, the action of the court in calling attention specifically to the evidence which must be the basis of the finding cannot be successfully assailed.

3. Some minor points are made by appellant which hardly demand extended notice and which may be considered together. The rulings of the court during the progress of the trial, if erroneous at all, were without prejudice. The instructions refused, as far as correct and appropriate, were covered by those given.

The point is urged here that the appliance of which complaint is made was not shown to be unsafe and insecure or dangerous and that the servant assumed the risk. The law applicable to this contention was properly presented by the instructions, but the jury on sufficient evidence found the facts to be in accordance with respondent's position. There is no doubt, as stated in *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, [49 Pac. 559], that "the master must supply his employees with suitable appliances and a reasonably safe place in which to perform their tasks, and cannot relieve himself from responsibility by delegating to any servant a duty which rests upon him as master; but where the overseer or foreman is negligent in any duty which does not devolve upon the master, then the master is not responsible for an injury resulting therefrom to another servant in the same general employment." The evidence here, however, shows that the machine originally furnished was unsafe and the appliance was put on to render it less dangerous. It was the duty of the master to see that this appliance was safely secured. There was evidence of negligence in that respect. The law also requires the master "to inspect the machinery and appliances furnished to his servant and this duty must be continuously fulfilled and positively performed." (*Dyas* v. *Southern Pacific Co.*, 140 Cal. 296, [73 Pac. 972].) It cannot be said that respondent assumed the risk, as he was not at work upon this particular machine, but went there to adjust it at the request of an inexperienced workman, and the respondent was ignorant of the manner in which the ap-

pliance was fastened to the machine. "Under such circumstances it is the duty of the master to warn the employee." (*Tedford* v. *Los Angeles Electric Co.,* 134 Cal. 76, [66 Pac. 76].) "To relieve the master, the employee must not only know of the defect, but also must know the dangers and risks attending the operation of the machines by reason of the defects." (*Nofsinger* v. *Goldman,* 122 Cal. 609, [55 Pac. 425].)

There was sufficient evidence, if believed by the jury, to uphold the contention of respondent in harmony with the foregoing principles of law. It may be conceded that the case is a close one, but an appellate court should not substitute its own judgment of the facts for that of the trial court or of a jury, nor should a verdict be lightly disturbed.

We are not prepared to say that there is an entire absence of evidence to support the verdict or that there was any prejudicial error committed. The judgment and order denying the motion for a new trial are affirmed.

Hart, J., and Chipman, P. J., concurred.