## MARYLAND CASUALTY CO. v. SCRUGGS et al. (No. 2536.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 28, 1925. Rehearing Denied , Nov. 25, 1925.)

**1. Master and servant ⬤⟹418(6)—Oil company's agent held not conclusively shown to be independent contractor.**

In proceeding for compensation for death of one employed by agent of gasoline and oil company, agent *held* not conclusively shown to be independent contractor; but evidence presented question of fact for trial court.

**2. Appeal and error ⬤⟹1010(1)—Finding of fact by trial court conclusive.**

The findings of fact by the trial court, supported by evidence, are binding on appeal.

**3. Corporations ⬤⟹432(12)—Finding that agent was authorized to employ help sustained under evidence.**

In proceeding for compensation for death of son of agent of gasoline and oil company, employed as assistant by father, evidence *held* sufficient to sustain finding that agent had authority to employ assistants, sufficient to render them employees of company.

**4. Master and servant ⬤⟹366—Insurer not liable to compensate for injuries secured in prohibited employment.**

An insurer is not liable under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for injuries to children under 17 employed to labor in any mine, quarry, or place where explosives are used, in violation of Vernon's Ann. Pen. Code Supp. 1918, art. 1050f.

**5. Master and servant ⬤⟹366—Gasoline and oil station held not a "place where explosives are used" within meaning of statute prohibiting employment of children under 17.**

A gasoline and oil station is not a place where explosives are used within the meaning of Vernon's Ann. Pen. Code Supp. 1918, art. 1050f, prohibiting persons under 17 from working in such places; the phrase "place where explosives are used" being in conjunction with mines and quarries, and by application of ejusdem generis rule must be held to refer to places similar to mines and quarries.

**6. Master and servant ⬤⟹356—Contributory negligence of parents of deceased not bar to compensation.**

In view of Workmen's Compensation Act 1917, § 3, as amended by Acts 38th Leg. (1923) c. 177, now Rev. St. 1925, art. 8306, § 3, abrogating common-law right of action in parents of minor employees against employer for injuries, their contributory negligence in allowing boy under 17 to work about gasoline and oil station *held* not a bar to recovery of compensation.

Appeal from District Court, Donley County; R. L. Templeton, Judge.

Suit by the Maryland Casualty Company against George N. Scruggs and another to set aside an award of the Industrial Accident Board. From a judgment for defendants on their cross-action seeking recovery de novo, plaintiff appeals. Affirmed.

Turner, Dooley & Gibson, of Amarillo, for appellant.

W. T. Link, of Clarendon, for appellees.

JACKSON, J. The Maryland Casualty Company, hereinafter called appellant, instituted this suit in the district court of Donley county, Tex., against George N. Scruggs and wife, hereinafter called appellees, to set aside the award made by the Industrial Accident Board of this state on January 25, 1924, in which award appellees were allowed $10.38 per week for a period of 360 weeks as compensation for the death of their son, George Scruggs, Jr., on the theory that at the time appellees' son was fatally injured he was an employee of the Pierce Oil Corporation, which had prior thereto taken out liability insurance pursuant to the Workmen's Compensation Law, with the appellant.

The appellees answered by cross-action, seeking recovery de novo on account of the death of their son, alleged to have been fatally burned in the performance of his duties as an employee of the Corporation, and that his services were of the value of $18 per week. The Corporation, in compliance with the Workmen's Compensation Law, had secured a policy of insurance with appellant, which was in force at the time of the injury and death of their son.

Appellees alleged that the Corporation was engaged in selling gasoline, kerosene, and other petroleum products to filling stations, garages, retail dealers, and other consumers at Clarendon and other places in Texas, and appellee George N. Scruggs was an employee of said Oil Corporation at Clarendon authorized to look after and care for its business at Clarendon, Ashtola, Lelia Lake, Brice, and Palo Duro, Tex.; that the Corporation contemplated in the employment of George N. Scruggs that it would become necessary at times to employ others as helpers to properly and efficiently conduct its business at said places, and that it was agreed that said George N. Scruggs, acting as the agent and employee of the Pierce Oil Corporation, would, when necessary, employ help, and said Scruggs was authorized, empowered, and permitted by said Corporation to employ help when he deemed it necessary to conduct the business; that in May, 1923, and sundry other times it was necessary to employ help, and George N. Scruggs on said date employed his son to work for the Corporation at Clarendon and the other places, and his duty was to do whatever was necessary to properly and efficiently conduct the business; that during the month of May, 1923, George Scruggs, Jr., worked before and after school,

---

on Saturdays and holidays, and about June 1st he began devoting his entire time to the work, all of which was known to said Corporation, and such employment was consented to and ratified by it; that on the 27th day of July, 1923, while actively engaged in the performance of his duties, George Scruggs, Jr., was fatally burned, from the effect of which he died the following day, and his death was the direct, proximate, and immediate result of his employment and service for said Corporation.

Appellees further alleged a custom of the Corporation to employ agents to conduct its business in various towns, with the understanding that it would be necessary that such agents and employees would, in the name of the Corporation and in its behalf, employ others to assist in conducting its business, and that such custom was followed by its agents where it transacted business, and was assented and agreed to by the Corporation, which expected the employment of others by appellee at Clarendon.

Appellant, in reply to appellees' pleading, filed a general demurrer, special exception, general denial, and specially alleged that at and before the accident and death of the boy he was working under and for his father, George N. Scruggs, who then and there stood in the relationship of an independent contractor to the Corporation handling and marketing its products at Clarendon and vicinity under a commission contract, whereby he was required, at his own expense, to furnish the delivery equipment and necessary help, and was free to choose the manner and means of performing such work, and could regulate, at his own discretion, the amount of time he would devote to the work, and was free to engage in other business on his own account, and was not subject to such supervision and control as would render him an employee of the Corporation, and in his capacity as independent contractor he arranged with his son to work for him, and the latter was so working and was not an employee of said Corporation at the time he received his fatal injuries.

Appellant also alleged that George Scruggs, Jr., was not at any time hired or engaged to work for the Corporation; that it had no contract with him, and whatever work he did was pursuant to an arrangement between him and his father without consulting the Corporation, which exercised no direction or control over the boy as to the terms, hours, or other conditions, but he was solely subject to the authority and direction of his father, who was free to dismiss him without consulting with the Corporation, and who was solely responsible for his wages, if any he received, and, if employed by any one, it was his father and not the Corporation.

Appellant also alleges that George Scruggs, Jr., was less than 17 years of age at the time of his death, with very little previous experience in the work or the character thereof, and, unmindful of his immature age and lack of experience, his father had, on his own responsibility, put him to work in and about the premises and property of the Corporation notwithstanding the business consisted of dealing with inflammable and combustible materials, and brought the boy in constant proximity to such combustible and inflammable materials, as well as dangerous machinery such as the pump and engine with which George Scruggs, Jr., was working at the time he was fatally burned, and that George N. Scruggs had kept his son in and about such dangerous work for several months preceding his death, and the hazard thereof was greatly increased on account of the inexperience and immature age of the boy, and that the placing and keeping of the boy at work, under the circumstances, was with the consent and approval of appellee Bessie Scruggs, who was well acquainted with the conditions, and that a man of ordinary prudence would not, under the circumstances, have subjected the boy to such hazards as the work involved, all of which was negligence on the part of appellees, and the proximate cause of the injury and death of their son, and because of such negligence appellees are barred from any recovery against appellant.

The cause was tried below before the court, who rendered judgment in favor of appellees for the sum of $10.38 per week for the full period of 360 weeks, from which judgment appellant has appealed.

The provisions of the written contract between appellee Scruggs and the Pierce Oil Corporation material to the disposition of the case are:

"Pierce Oil Corporation hereby constitutes and appoints G. N. Scruggs as its agent at Clarendon, Tex. (but only for the purposes and subject to the conditions and limitations herein specified) to sell the commodities herein named for it, on commission, as hereinafter specified, effective 20th day of April, 1922, and the said G. N. Scruggs agrees to be responsible and liable to the said Corporation for all loss or damage to commodities delivered to him for sale, occurring by reason of any act or omission on the part of himself or themselves, or any person employed by him or them, and agrees to give bond as required by the said Corporation with a surety company as surety to be designated by said Corporation.

"This agreement and all rights and authorities of the agent may be terminated at any time at the option of said Pierce Oil Corporation without notice."

The contract then names the products to be handled, the price to be received therefor, the commission allowed on sales in bulk, barrels, and carloads, sales to railroads and on transfer deliveries or shipments to or between Pierce Oil Corporation agencies, and stipulates that there shall be no commission on straight carload sales of certain products named, and none on sales to customers that refuse shipments and return the goods, and none on unsalable

stock transferred to another agency; that when the agent has been instructed to confine customers to cash deliveries or specified credit rating, and he makes sales on credit in excess of such rating, he assumes all liability for such sales, and the Corporation is allowed to deduct the value of such sales from the agent's commission, and provides that the agent is authorized to sell the commodities only upon such terms and conditions as may from time to time be specified to him by said Corporation; that the commissions as stated shall cover all expenses which may be incurred in making bulk or package deliveries in the proper handling of the business, except drayage to the trade in Clarendon, Ashtola, Brice, Palo Duro and Lelia Lake, and drayage of empties from Brice, for which service specified prices are set out; that no items of expense except as shown in the agreement shall be allowed. except when written authority for incurring such expense is first obtained.

"Agent hereby agrees to be responsible to Pierce Oil Corporation for all checks received by him in payment of cash sales. Agent further agrees that title to all records. or other property coming into his possession by virtue of his agency shall remain in the Pierce Oil Corporation, and that he will immediately turn same over to any authorized representative of the Corporation upon demand.

"All sales of the commodities made by the agent shall be made and invoiced in the name of the Corporation and all moneys received for cash sales or collections or in any way due the Corporation must be promptly remitted in full to the division office.

"Commissions will be paid from the division office to the agent as soon after the first of the month as the office can work up the necessary data, and will be computed at rates named above and credited your account, but shall be due and payable only on a percentage basis; that is, the percentage that all moneys remitted for credit sales to outstanding accounts and for cash sales during the month bears to the total sales not remitted for at close of previous month's business, added to the total value of current month's business. * * *"

That a current account will be kept at the division office of commissions on unpaid credit sales and carried forward from month to month, and taken into account on the percentage plan, but "in the event of the termination of your employment with this Corporation, you will have no further right in the commissions that may be due on sales made which were not remitted for as of the date of the termination of your employment." That no commissions would be paid on any accounts turned over to the credit department or collection agency for attention.

It also provides:

"It is agreed and understood that the agent is to furnish his own trucks and other automotive equipment and wagon and teams, and same are to be furnished and operated at no expense to the Pierce Oil Corporation, and any products of the Corporation used in the operation of any equipment shall be invoiced and paid for by the agent, at prevailing net schedule prices date of delivery, less regular commissions stipluated above."

The findings of fact filed by the trial court consist of 37 pages in the transcript, from which we have gleaned the following:

That George N. Scruggs transacted the business under the contract until about January 1, 1924; that the products of the Corporation were distributed at various other towns in Texas under similar contracts. It owned and maintained at Clarendon the warehouse, storage tanks, pump house, and pump and an engine used for pumping oil and gasoline from tank cars about 50 feet to the stationary tanks upon which was painted, "Pierce Oil Corporation."

All of the products were shipped in the name of the Corporation, the title was retained in it, and all advertising and all the business was conducted and transacted in its name. Quantities of kerosene and gasoline were kept in the warehouse.

It required duplicate invoices on forms it furnished on every sale, signed by the purchaser, one of which was forwarded to the division manager at his headquarters in Dallas. It notified appellee it had provided for payment of compensation for injuries to "my or our injured employees." George N. Scruggs agreed to be subject to the terms of the Compensation Law.

It required all money and checks on cash sales transmitted to division headquarters at Dallas. The accounts on credit sales were kept by it and statements sent by it to the credit customers, and in most instances the customer remitted directly to the Corporation. It required semiweekly and monthly reports on forms it furnished showing the commodity sold, the price paid, the name and address of each purchaser. It directed to whom sales could be made on credit, and the amount thereof. It forwarded more than 180 letters to appellee demanding, among other things, that he push sales, make collections, keep premises clean, keep sand on hand in case of fire, protect the interest of the Corporation before the equalization board, demanding that he devote his entire time to the business, forbidding the employment of any child under the age of 15 years because it would render its indemnity insurance void; that the Corporation, in numerous towns, conducted its business by commission agents under contracts similar to appellee's, at some of which one and two helpers were employed, but such helpers were engaged by the agent on his own responsibility, paid by him out of his commission, and the Corporation exercised no direction or control over such helpers. The corporation knew of the employment of such helpers, and contemplated that if the business demanded it the agent would secure help. The Corporation had done business in this way for 10 or 15 years in its northern division of the state as well as at Clarendon.

All stationery, invoices, blanks, and other forms furnished by the Corporation carried

the name of "Pierce Oil Corporation," as the owner and seller. All commissions were paid each month from the division office, which covered all the compensation received by George N. Scruggs, except certain prices for certain stipulated drayage. From May to September help was necessary to the best interest of the business, and when the business was short of some commodity George N. Scruggs was permitted to secure the same with his truck from the Corporation's warehouse in Amarillo, and on such occasions help was necessary, and the Corporation would have considered it negligence to have closed the business for a half a day or longer, and from such negligence would have felt authorized to release the commission agent from his position.

Appellee Scruggs, when his trucks were not being used in the business, did hauling for others, for which he received pay aggregating approximately $50 a month, but very little of such hauling was done between May and September.

The father, on his own initiative, and without consulting the Corporation, put his son, who was 16 years old April 15, 1923, to work regularly about June 1st of that year, and Bessie Scruggs, the mother of the boy and the wife of George N. Scruggs, was familiar with the premises, conditions, and hazards incident to the employment. On July 27th, in the regular routine of his work, the boy undertook to pump kerosene from a tank car on the railroad into the storage tank; the pump failed to work satisfactorily, and in priming it with kerosene his clothes became saturated, a spray of kerosene being produced, and an explosion occurred causing the boy's burns, from which he died the following day. His services were of the reasonable value of $3 per day. He was not married nor emancipated. S. C. Rogers, who resided in Vernon, the sales agent of the Corporation, and who had immediate supervision of the business at Clarendon, subject to the manager, was advised by the father that the boy was working there, saw him at work, but did not know the age of the boy, and did not report to the Corporation, which neither paid nor exercised any control over him, but he was under the exclusive and sole direction of his father. The Corporation knew of the defective condition of the pump, and had had appellee negotiating for a new one to be installed.

[1, 2] Appellant's first assignment urges as error the action of the trial court in rendering judgment against it, because the evidence shows that George N. Scruggs stood in the relation of an independent contractor to the Corporation, and George Scruggs, Jr., was, therefore, not an employee of the Corporation, but was working for his father.

It will be noted that the Corporation owned and maintained all houses, machinery, and equipment used in business except the trucks furnished by appellee for delivering products to the trade; that the Corporation retained title to all products it shipped to Clarendon, directed how the evidence of each sale should be kept, how the proceeds of each cash sale should be remitted, kept the accounts of credit sales, sent out the statements thereof, and collected directly from the customers; directed how and when reports should be made to it, demanded that Scruggs devote his entire time to its service, had the business advertised and conducted in its name, forbade the employment of any child under the age of 15 years because it would void its insurance, notified appellee that it had provided for payment of compensation for injuries to "my or our injured employees." The Corporation contemplated that appellee would employ help if needed, and help was necessary from May to September, and when appellee was absent on business for the Corporation. He was absent the day of the fatal injuries for the purpose of obtaining products from the warehouse of the Corporation at Amarillo to supply products not had at that time at Clarendon. Appellee Scruggs was required to furnish the trucks and pay the expense of operating them, and permitted to engage and discharge such help as he deemed necessary at his discretion.

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend upon its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact." 31 C. J. 473.

Courts emphasize in different opinions various facts and combinations of facts as evidencing whether the relation is that of independent contractor or master and servant. In our opinion, the record in this case, under the authorities, does not show the relation of George N. Scruggs to the Pierce Oil Corporation so conclusively that we can say, as a question of law, he was an independent contractor. It was, therefore, a question of fact for the trial court, which he determined in favor of appellees, and his action is binding upon the appellant and this court. Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S. W. 399; Dublin et al. v. Taylor B. & H. Ry. Co. et al., 92 Tex. 535, 50 S. W. 120; Texas Refining Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131; United States Fidelity & Guaranty Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; Prairie Oil & Gas Co. v. Wright (Tex. Civ. App.) 238 S. W. 974; Standard Oil Co. v. Parkinson, 152 F. 681, 82 C. C. A. 29; Giacomini v. Pacific Lumber Co., 5 Cal. App. 218, 89 P. 1059; Glover v. Richardson & Elmer Co., 64 Wash. 403, 116 P. 861; Brown v. Industrial Accident Commission of California et al., 174 Cal. 457, 163 P. 664; Chicago, R. I. & P. Ry. Co. v.

Bennett, 36 Okl. 358, 128 P. 705, 20 A. L. R. 678. The notes to the last case are exhaustive.

[3] Appellant, in its second and third assignments, assails as error the action of the trial court in rendering judgment against it, because it urges there is no testimony to show that the parties entertained an intent or understanding that George Scruggs, Jr., should occupy the relation of employee of the Corporation, and no proof that George N. Scruggs had any authority to employ help on account of the Corporation.

The contract holds George N. Scruggs responsible for any act or omission of himself or "any person employed by him." At various other towns in Texas, as well as at Clarendon, helpers were engaged by the commission agents of the Corporation, of which it had knowledge, and in which it acquiesced, and for years it had been a custom with it to so handle its business. If the business, whether from the volume thereof, or absence of the agent for the Corporation, was necessary, it contemplated that the agent would secure help. For the best interest of the Corporation, from May to September each year it was necessary to employ help. On the day of the fatal injury, July 27th, the agent was absent on business for the Corporation. It had notified appellee that provision had been made for the payment of compensation for injuries to "my or our injured employees." S. C. Rogers, sales agent, with immediate supervision of the business, knew the boy was at work.

"The agent who, with authority express or implied, employs help for the benefit of his principal's business, thereby creates the relation of employer and employee between such help and his principal." Schneider's Workmen's Compensation Law, vol. 1, p. 22; Missouri, Kansas & T. Ry. Co. of Texas v. Reasor, 28 Tex. Civ. App. 302, 68 S. W. 332; Fort Worth & D. C. Ry. Co. v. Lynch (Tex. Civ. App.) 136 S. W. 580.

"The rule is well settled that a person who is procured by an employee * * * to assist him in his duties, the employer assenting to the arrangement, occupies the position of an employee, and that the duty owed him by the employer is the same as that owed to other employees. And it does not make any difference that * * * the assistant is promised no compensation for his services. Authority to employ * * * assistance may be implied from the nature of the work to be performed, and also from a general course of conducting the business of the employer by the employee for so long a time that consent thereto may be inferred." R. C. L. vol. 18, p. 577; East Line & R. R. R. Co. v. Scott, 71 Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804; Paducah Box & Basket Co. v. Ruby Parker, by Next Friend, 143 Ky. 607, 136 S. W. 1012, 43 L. R. A. (N. S.) 179, and notes; John J. Purtell, by Next Friend, v. Philadelphia & Reading Coal & Iron Co., 256 Ill. 110, 99 N. E. 899, 43 L. R. A. (N. S.) 193, and notes, Ann. Cas. 1913E, 335; Tennessee Coal, Iron & R. Co. v. Hayes, 97

Ala. 201, 12 So. 98; Baltimore & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 44 S. Ct. 165, 68 L. Ed. 433; Semper v. American Press (Mo. App.) 273 S. W. 186; Aga 'v. Harbach, 127 Iowa, 144, 102 N. W. 833, 109 Am. St. Rep. 377, 4 Ann. Cas. 441; Bidwell Coal Co. v. Davidson, 187 Iowa, 809, 174 N. W. 592, 8 A. L. R. 1058.

The findings of the court, and the law as announced in the foregoing text-books and decisions of the courts, are conclusive against appellant's contention that George Scruggs, Jr., was not an employee of the Pierce Oil Corporation.

[4, 5] Appellant, in its fourth assignment, challenges the action of the trial court in rendering judgment against it, urging that George Scruggs, Jr., could not be an employee of the Pierce Oil Corporation at the time he received his fatal injuries because he was under 17 years of age, and was working in a "place where explosives are used."

Article 1050f of the Criminal Statutes (Pen. Code Supp. 1918) provides that—

"Any person, or agent or employee of any person, firm or corporation who shall hereafter employ any child under the age of seventeen (17) years to labor * * * in any mine, quarry, or place where explosives are used" shall be guilty of a misdemeanor, etc.

The law is well settled that if the above statute prohibited the employment of George Scruggs, Jr., in the work he was doing at the time he received his injuries, appellant would not be liable. Bridgeport, etc., Co. v. Erwin (Tex. Civ. App.) 241 S. W. 247; Galloway v. Lumbermen's Indemnity Exchange (Tex. Com. App.) 238 S. W. 646.

The record discloses that large quantities of kerosene, gasoline, and other petroleum products were stored in the warehouse, storage tanks, etc., of the Corporation, and that an engine, operated with gasoline, was used in pumping oil and gasoline from the tank cars to the storage tanks, and while priming the pump with kerosene, an explosion occurred, injuring George Scruggs, Jr., from which his death resulted; at which time he was under the age of 17 years. C. J. vol. 19, p. 1255, defines ejusdem generis to mean, literally, "Of the same kind or species," which the writer says is:

"A well-known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument, the doctrine being, that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind."

This rule of construction is applied by the courts of Texas in the case of Right-of-Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co. et al., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; also in Galveston, H. & H. R. Co. v. Anderson (Tex. Civ. App.) 229 S. W. 998.

In our opinion, the use of the language, "or place where explosives are used," immediately following the words "mine" and "quarry," must be construed to refer to a place similar to a "mine" or "quarry," "of the same kind or species," "to things of the same kind," and such "explosives" as are used in mining or quarrying. This assignment is overruled.

[6] Appellant's fifth and last assignment urges, as error, the action of the trial court in sustaining a special exception to its allegation that appellees were guilty of such negligence as would defeat their recovery in putting their son to work on the premises, in which work he was engaged some months prior to his injury and death, because of the inflammable and combustible material stored on the premises, which negligence was increased by the lack of experience and immature age of their son. This contention would be tenable but for the Workmen's Compensation Law.

It is uncontroverted that appellees were the parents and beneficiaries of the deceased, and that he was a minor; that the Pierce Oil Corporation carried compensation insurance with appellant for the benefit of its employees, and was, therefore, a subscriber under the statute; that appellee George N. Scruggs had been notified thereof, and had waived the common-law right of recovery.

In an opinion of this court, Silurian Oil Co. v. White (Tex. Civ. App.) 252 S. W. 569, written by Chief Justice Hall, it was held that the parents' common-law right of action for injuries to a minor child was not abrogated by the Workmen's Compensation Act of 1917 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

At the time the cause of action asserted in the case of Silurian Oil Co. v. White arose, the Act of 1917, § 3 (article 5246—3, Vernon's Ann. Civ. St. Supp. 1918), read:

"The employees of a subscriber shall have no right of action against their employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for," etc.

The court, considering the above article with the other provisions of the law, correctly decided that the act did not directly, or by implication, abrogate the common law.

In 1923 the above article was amended by the Acts of the Thirty-Eighth Legislature, c. 177 (article 8306, section 3, of the Revised Civil Statutes of Texas 1925), and now reads:

"The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided," etc.

The statute last above quoted was in effect at the time George Scruggs, Jr., received the injuries which resulted in his death, and appellees' cause of action arose thereunder, and this article, together with the other provisions of the law, in our opinion, abrogates appellees' common-law right of action, and the trial court did not commit error in sustaining the exception to appellant's pleading charging appellees with negligence. Novack v. Montgomery Ward & Co., 158 Minn. 505, 198 N. W. 294; Gregutis v. Waclark Wire Works, 86 N. J. Law, 610, 92 A. 354; Hilsinger v. Zimmerman Steel Co., 193 Iowa, 708, 187 N. W. 493; Adkins v. Hope Engineering & Supply Co., 81 W. Va. 449, 94 S. E. 506; Buonfiglio v. R. Neumann & Co., 93 N. J. Law, 174, 107 A. 285.

Finding no reversible error in the record, the judgment is affirmed.