**BRIDGEPORT BRICK & TILE CO. v. ERWIN. (No. 9781.)**

(Court of Civil Appeals of Texas. Fort Worth. March 11, 1922. Rehearing Denied April 15, 1922.)

1. **Master and servant** ☞366—**Minor illegally employed not an "employé" within Employers' Liability Act.**

A minor under 15 years, whose employment by a brick and tile company was illegal and punishable by Act March 13, 1911 (Vernon's Ann. Pen. Code 1916, arts. 1050–1050d), was not an "employé" within Employers' Liability Act, pt. 1, §§ 3, 3a (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246–3, 5246–4).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

2. **Master and servant** ☞95—**Master liable for injuries to illegally employed minor, though not in line of duty.**

Where the employment of a servant under 15 years of age as a teamster to work around dangerous machinery in violation of Act March 13, 1911 (Vernon's Ann. Pen. Code 1916, arts. 1050–1050d) was the proximate cause of the injury, he could recover, although not engaged to perform the kind of work which caused the injury.

3. **Master and servant** ☞228(2)—**Illegally employed minor not chargeable with contributory negligence.**

A minor under 15 years, employed by a brickyard company to work in and about dangerous machinery, in violation of Act March 13, 1911 (Vernon's Ann. Pen. Code 1916, arts. 1050–1050d), was not chargeable with contributory negligence.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by Riley Erwin by next friend, W. W. Erwin, against the Bridgeport Brick & Tile Company. From judgment for plaintiff, defendant appeals. Affirmed.

McMurray & Gettys, of Decatur, and Harry P. Lawther, of Dallas, for appellant.

CONNER, C. J. This is an appeal from a judgment for $7,500 in favor of appellee as compensation for personal injuries. So far as necessary to state, the appellee, Riley Erwin, in the petition filed in his behalf by W. W. Erwin as next friend, alleged that while under the age of 15 years he had been employed by the appellant company to engage in labor, the duties of which required or permitted him to be and remain about dangerous machinery, and it was alleged that appellant company had been guilty of negligence in this respect. The company defended on the grounds: (1) That at the time of the employment and accident and injury to the plaintiff, defendant was a "subscriber" under the terms of the Texas Employers' Liability Act (Acts 35th Leg. c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246–1 to 5246–91]); (2) that plaintiff was employed by defendant as a teamster, or driver of a wheeler, with the consent of his parents; that his father, W. W. Erwin (the next friend in this case), was the foreman of defendant in control and with supervision over its teamsters or drivers, and that in consequence said plaintiff at the time of the accident and injury was under the direction, control, and supervision of his father; (3) that in the performance of his duties as a driver it was not necessary for him to go or be in proximity to the driving belt and wheel, or lever, that threw the machinery in and out of gear; that he was not ordered by any one in authority to throw said lever; that this was the duty of other employés of defendant; that in taking hold of the lever Riley Erwin was acting without the scope of his employment; was a mere volunteer acting without authority or direction of any

one with supervision or control over him, and that hence he assumed the risk of his act; (4) that plaintiff had been warned by defendant and its employés to stay away from the lever in question, and had been told of the danger of being about said machinery; (5) that plaintiff was guilty of contributory negligence. Upon the conclusion of the evidence the defendant requested an instructed verdict, but this the court refused to give, and submitted the cause upon special issues.

The machinery about which Riley Erwin was employed at the time consisted of what is termed in the evidence as a dry pan, into which dirt hauled by the drivers was shoveled, and from thence elevated to a platform several feet above, and into a dirt or mud mixer located upon the elevated platform and operated by an employé. The dry pan was elevated and lowered by means of machinery, which was set in operation by means of a' lever operated by hand. On the occasion in question Riley Erwin, who was a driver of one of the vehicles with which the brick dirt was brought from the field to the dry pan, had just driven up alongside the platform upon which the dry pan was located, and left his team, and was awaiting the unloading of a preceding driver, and was standing up against a piece of timber fastened to posts and extending in a horizontal direction between the dry pan and the roadway of the drivers. He was within a foot or two of the lever referred to, and while in this situation the operator of the mixing machinery called out to the operator of the dry pan to the effect that his machine was full, which carried with it the direction to the operator of the dry pan to throw the lever which disconnected the machinery and interrupted the up-carrying of the dirt until the operator of the mixer should again give a signal for more dirt; such was the custom of the operators referred to, and it was the duty of the operators of the dry pan to throw the lever in accordance with the signals given. On the occasion in question the operator of the mixer gave the signal to throw the lever and disconnect the hoisting operation. This signal was directed to one of the operators of the dry pan, and there was evidence tending to show that the operators of the dry pan either did not hear the signal or did not understand the direction given; at all events neither of these operators readily responded, and Riley Erwin without direction to do so, immediately stooped beneath the horizontal timber, before mentioned, and attempted to throw the lever disconnecting the hoisting apparatus. When seized by Riley Erwin the lever became detached from its fastening, and was thrown into a flywheel, which in turn propelled the lever against the side of Riley Erwin's head, and he was very seriously injured.

In answer to special issues, stated in narrative form, the jury found that the employ-ment of Riley Erwin was the proximate cause of his injury; that he was not guilty of contributory negligence, and that his damage amounted to the sum of $10,000; that the boy was not negligent in moving the lever; that it was the duty of the operator of the dry pan to throw the bar, and was no part of the duty of Riley Erwin. They further found in this connection, however, that there was a custom known to and notorious among the servants and operators of the machinery for drivers to occasionally throw the lever referred to. In answer to a special issue, submitted by the defendant, the jury further found that Riley Erwin was employed by his father, who had superintendency and control over him, and who had power to hire and discharge such employés. The jury further found in this connection, however, that Richard Rawle, as superintendent of the brick plant, authorized W. W. Erwin, the father of Riley, to put him to work driving a wheeler hauling dirt. The jury further found as stated that it was no part of Riley Erwin's duty as a driver of a wheeler to pull the lever which threw the machinery of the dry pan out of gear, and that he had been warned by the defendant through its servants not to do so, and to keep away from the machinery about the dry pan, but there was no rule of the company so forbidding: that Riley Erwin would not have received his injury but for the fact that he pulled the lever which threw the machinery of the dry pan out of gear.

[1, 2] In view of the findings of the jury and the facts that must be implied from the evidence, we think the judgment must be affirmed. One of appellant's principal contentions is that, because of the fact, which is admitted, that the appellant company was a "subscriber" under the terms of the Employers' Liability Act, appellant was not liable in this action. It was admitted that appellant had fully complied with the terms and regulations of the act referred to, and under sections 3 and 3a of part 1 of that act appellant could only be held liable in this case on the theory that Riley Erwin at the time of his injury was not an "employé" of defendant within the meaning of the act.

The findings show that Riley Erwin at the time of his injury was less than 15 years old, and there is evidence to the effect that he was but 14½ years old. The Legislature, by Act approved March 13, 1911 (Acts 32d Leg. c. 46 [Vernon's Ann. Pen. Code 1916, arts. 1050 –1050d]), regulating the employment of children in factories, mills, mines, quarries, distilleries, breweries, manufacturing, and other establishments, expressly provides, so far now as pertinent, that:

"Any person, or any agent, or any employé of any person, firm or corporation who shall hereafter employ any child under the age of fifteen years to labor in or about any manufacturing or other establishment using dangerous ma-

chinery, or about the machinery in any mill or factory * * * shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars, * * * and each day the provisions of this act are violated shall constitute a separate offense."

There can be no doubt of the violation of this statute by the employment of Riley Erwin, whether by his father or another servant of the defendant company, for there is no contention that the plant and machinery at and about which Riley Erwin worked was not dangerous within the meaning of the prohibitory act quoted. The question of whether a minor under the age of 15 years, employed in violation of the statute quoted, was an employé within the meaning of sections 3 and 3a of the Employers' Liability Act, arose in the case of Waterman Lumber Co. v. Beatty (Tex. Civ. App.) 204 S. W. 448, and the Court of Civil Appeals at Texarkana held that the minor in that case was not such an employé, and that, in effect, the violation of the statute by the Waterman Lumber Company constituted negligence as a matter of law, and that the company was liable for the resulting injury. This opinion was affirmed by our Supreme Court, as will be seen by reference to Waterman Lumber Co. v. Beatty, 218 S. W. 363. The question again arose in the case of Galloway v. Lumbermen's Indemnity Exchange, decided by the Beaumont Court of Civil Appeals and reported in 227 S. W. 536, and that court also, following the Texarkana case, gave as its conclusion that such a minor so employed was not an "employé" within the meaning of the Workman's Compensation Act.

It may be contended that the decision of the Supreme Court approving the holding of the Texarkana Court of Appeals is distinguishable from the one before us, in that it was found by the Supreme Court that the minor involved in that case at the time of his injury was at work within the scope of his duty under his employment, whereas in the case here the contrary is true, but we are not inclined to base our conclusion upon any such distinction. It is true that the jury found that it was no part of Riley Erwin's duty as a driver of a wheeler to pull the lever which threw the machinery of the dry pan out of gear, and that he would not have received the injury but for the fact that he did so pull the lever, yet there can be no question but that his employment required, or at least permitted, his presence in the immediate proximity to the dangerous machinery, and the findings, as also the testimony, show that, not only Riley Erwin, but other drivers, at different times and on numerous occasions, operated the lever within the knowledge of the servants of the appellant company, including Riley Erwin's father, who, having authority to employ and discharge hands, was the alter ego of the company. Moreover, and without reference to the custom of the drivers to so do, and without reference to the fact that Riley Erwin in throwing the lever was performing an act outside of his duty, we think that the law forbidding employment of such minors about such dangerous machinery is based upon the theory that such minors shall be conclusively presumed to be of that immature nature and of that childish disregard for commands and consequences as to make it unsafe for them to be trusted in and about dangerous machinery. The evidence in this case shows that Riley Erwin was an intelligent, bright boy, but he was of an age known to be heedless to a greater or less extent, unobservant of danger, and not fully capable of understanding or appreciating warnings of danger, and not so liable, in a case of sudden emergency, to heed warnings or commands. Under the circumstances, as it appears to us, it was quite natural for Riley Erwin, understanding the operation of the lever, and observing that the operation of the lever and observing that the operator of the dry pan had failed to heed the signal of the operator of the mixer, to himself meet the emergency, and we approve and are content to follow the decisions of the Court of Civil Appeals of Texarkana and of Beaumont upon the reasoning and upon the authorities in those cases cited, which we do not deem necessary to repeat.

[3] The questions of whether Riley Erwin assumed the risk or was guilty of contributory negligence is answered, we think, by what we have already said as to the apparent legislative purpose, and by the finding of the jury, which is not assailed, that he was not guilty of contributory negligence. Nor in this case do we consider of importance the fact that Riley Erwin was employed by his father, for not only was it shown that the father had authority to employ and discharge drivers, but, further, that appellant's general manager of the plant expressly consented to the employment. Nor do we think that the findings that it was no part of Riley Erwin's duty to pull the lever, and that he would not have been injured but for the fact that he did so, required the entry of a judgment for the defendant. It is true, as it undoubtedly appears, that the immediate cause of Riley Erwin's injury was pulling the lever, but the jury found that his employment by the defendant was the proximate cause of his injury, and not only is this finding unassailed, but it is in entire harmony with the decisions we have cited, as well as with the well-recognized rule that a wrongful act may become a proximate cause if followed in a natural and legal sequence by an injury, and when such injury or a like injury may have been reasonably contemplated by the wrongdoer at the time of the performance of the wrongful act. The

contemplation that injuries are liable to follow the employment of children of immature age about dangerous machinery is evidently the moving cause of all legislative acts forbidding such employment.

Objection was made to the testimony of several witnesses, who gave it as their opinion that the lever became detached from its fastening because of a missing nut from the bolt with which the lever was fastened, on the ground that the answers of the witnesses were nothing more than an opinion or conclusion. While no other possible cause for the lever's becoming insecure is presented by the evidence yet we regard it as immaterial in the determination of this case how the lever became insecure. It undoubtedly did become insecure, and the possibility of such insecurity seems quite naturally to be among the dangers included in operating the machinery or even in being in close proximity thereto. Nor do we think the verdict can be set aside on the ground that it is excessive. No evidence under the proposition so asserting is referred to in the brief of counsel. The only contention is that the answer of the jury assessed the damages in the sum of $10,000, and "that this verdict was excessive is evidenced by the fact that it so shocked the conscience of the trial court as plaintiff was compelled to enter a remittitur of $2,500 in order to have defendant's motion for a new trial overruled." It is evident that the entry of the remittitur, in the opinion of the court, took from the verdict whatever excess there was. Moreover, an examination of the evidence shows very serious and permanent injuries, in the light of which we feel no disposition to rule the verdict and judgment excessive.

We conclude that all assignments of error should be overruled, and the judgment affirmed.