364 So.2d 1243 (1978)
Billie Earl HETHCOAT, As Administratrix of the Estate of William Randolph Eatman, Jr., Deceased, Appellant.
v.
CHEVRON OIL CO., Hy-Way Heat Systems, Inc. and V.E. Whitehurst & Sons, Inc., Appellees.
No. FF-387.
District Court of Appeal of Florida, First District.
October 30, 1978.
Rehearing Denied December 29, 1978.
William C. Owen of McClure, Wigginton, Campbell & Owen, P.A., and Robert C. Dean, Tallahassee, for appellant.
Richard T. Jones and Robert Dennis Comfort of Jones & Langdon, P.A., Gainesville, for appellee Chevron.
*1244 Bruce S. Bullock and Martin J. Mickler of Bullock, Sharp & Childs, P.A., Jacksonville, for appellee Hy-Way.
Monroe S. McDonald of Sanders, McEwan, Mims & McDonald, Orlando, for appellee Whitehurst.
PER CURIAM.
Plaintiff appeals from judgments for all defendants entered on directed verdicts of nonliability. The principal issue is whether plaintiff's proof made a prima facie case against any of three defendants. The action arose from the death of plaintiff's husband, a welder, when the acetylene and oxygen flame from his torch exploded oil vapors or other volatile material in a large tank assembly which defendant Hy-Way designed, built, and sold as suitable for heating asphalt by circulating hot oil in coils through the storage tank. Use of an acetylene torch was necessary to remove a deteriorated innerliner of the heating chamber which was the heart of the system.
We have carefully reviewed the briefs and record, including the entire trial transcript and the exhibits. The trial judge was clearly correct in directing verdicts for the owner of the heating tank and for the manufacturer of the heat transfer oil that was used in it. Neither was there evidence sufficient for consideration by the jury as to the claim against Hy-Way, manufacturer of the tank.
The plaintiff's case against the manufacturer, in a light most favorable to plaintiff, comes to this: Hy-Way manufactured a machine for heating asphalt by means of coils circulating hot oil within the storage tank. The oil within the coils was heated by a small furnace integral to the tank. The intended use of the machine both deteriorated the innerliner of the furnace and produced combustible materials in the form of vapors from clinging oil, remaining after drainage, or other residues. Replacement of the deteriorated innerliner was inevitable unless the entire tank system was designed to be discarded when the innerliner failed. The innerliner could not be removed and replaced except by burning it out with an acetylene flame. An oxygen-rich flame, applied by the decedent's torch, tended to and did cause a violent explosion of the volatiles present in a closed space. The explosion killed the decedent.
Plaintiff first urges that the design was defective. We agree with the trial judge that no such defect was demonstrated by the evidence. The mere fact that an injury occurs as a result of the use of, or being in the vicinity of, a machine does not render the manufacturer liable. Virtually every machine is capable of being the instrument of hurt. Automobiles run over people, guns discharge bullets into people and electrical appliances shock and kill people. A pencil sharpener will grind off a finger if placed into it. A dishwasher will sever fingers and hand if inserted while in operation. To design a machine incapable of doing injury would require the design of an apparatus having no use. The law will not require an absurdity. Sub judice, the subject asphalt machine did no harm to the decedent. It just happened that the machine incorporated devices which used petroleum. The machine did not explode. The explosion resulted from exposing acetylene and oxygen to petroleum vapors.
Plaintiff further asserts as a basis of liability on the part of the manufacturer that there was no warning on the machine nor in the manufacturer's literature of the danger of applying a cutting torch without first purging the system by steam, urging that a manufacturer who markets a machine which inevitably requires maintenance involving a systemic and grave risk, without warning of risks that cannot be eliminated, is subject to potential liability even to those whose own vocational experience should provide warning enough. The application of such a rule of law would unquestionably have grave and now unthought of consequences. There is virtually no part of a machine, including the ordinary electric motor and the ordinary automobile which does not present potential dangers to a repairman. To hold that every part subject to repair at grave risk must have a *1245 posted warning would result in an impossible and even undesirable situation. One wonders, for instance, where the warning should be posted on a bicycle chain subject to severing the fingers of a repairman; the gas tank of an automobile subject to exploding while in the process of repair; the electric motor on all sorts of household devices (blenders, dishwashers, washing machines, air conditioners, etc.) subject to electrocuting a repairman if the current is not cut off.
We are not unaware of the holdings in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976) and Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), but those holdings were never intended to impose an impossible and unreasonable burden upon a manufacturer. Further, the issue is not whether the decedent assumed the risk when he put the torch to the tank, but whether or not there was a duty on the manufacturer to warn welders against such obvious danger. We conclude that there was no more duty on the manufacturer of the subject machine to warn of such danger than there is upon the manufacturer of an automobile to warn against the danger of putting an acetylene torch to the gasoline tank of an automobile. No such duty exists in either instance. There being no duty to warn, there was no negligence on the part of the manufacturer.
AFFIRMED.
McCORD, C.J., and BOYER, J., concur.
SMITH, J., concurs in part and dissents in part.
SMITH, Judge, concurring and dissenting:
I agree with the majority that the trial court correctly directed verdicts for the owner of the heating tank and the manufacturer of the heat transfer oil which was used in the tank. I disagree with the majority's conclusion that the plaintiff's evidence was as a matter of law insufficient against Hy-Way, manufacturer of the heating tank. In my opinion a jury question was presented.
Until recently it could well be argued by Hy-Way that the danger of applying an acetylene flame in a close space where oil residues are present is open and obvious, if not to the world at large, at least to one who is by trade a welder. See Farmhand, Inc. v. Brandies, 327 So.2d 76 (Fla. 1st DCA 1976). But the "patent danger" rule, preventing liability by eliminating the duty to warn in certain cases, has now been abrogated. See Blaw-Knox Food & Chem. Equip. Corp. v. Holmes, 348 So.2d 604 (Fla. 4th DCA 1977), cert. dism., 351 So.2d 405 (Fla. 1977); West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976); Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). Plaintiff's motion at trial to amend the pleadings to conform to the evidence giving rise to a claim under Section 402A, Restatement (Second) of Torts, made West applicable in this case. Linder v. Combustion Engineering, Inc., 342 So.2d 474, 476 (Fla. 1976); Fla. R.Civ.P. 1.190(b).
Once the patent danger rule is dropped from consideration, I think plaintiff's evidence made a jury question either on the issue of Hy-Way's negligence or on the issue of whether its machine was designed with a defect making it unreasonably dangerous. The intended use of the machine both deteriorated the innerliner of the furnace and produced combustible materials in the form of vapors from clinging oil, remaining after drainage, or other residues. The jury could have found, I think, that the system was not properly vented. The jury could also have found that the manufacturer gave insufficient warnings concerning precautions to be taken in the anticipated removal of the deteriorated innerliner by burning it out with an acetylene flame. The manufacturer's published instructions for that recommended process stated: "Remove all oil from heater"; but, plaintiff urges, Hy-Way negligently failed to prescribe the use of steam to remove oil film or other volatiles remaining after drainage of the tank.
In Blaw-Knox, the District Court of Appeal, Fourth District, found that a jury question of negligence was presented on the issue, among others, of whether the manufacturer *1246 of a potato chip cooker negligently designed its machine in such a way that workers could not readily correct a predictable malfunction without standing precariously over a kettle of hot oil, and in failing to give proper instructions for avoiding the grave danger thereby encountered. The danger of balancing on a board over a kettle of hot oil was presumably as evident to the workers in Blaw-Knox as the danger of firing an acetylene torch was to the welders in this case. We attributed the same sort of knowledge to Brandies in Farmhand, and so eliminated the duty to warn because of the "patent danger" rule. Now, I am persuaded, the manufacturer who markets a machine which by design inevitably requires maintenance involving a systemic and grave risk, and who does not minimize the risk or warn if the risk cannot be eliminated, is subject to potential liability even to those whose vocational experience should provide warning enough. The allocation of responsibility in such a case is for the jury.
I would affirm as to Whitehurst and Chevron, but reverse as to Hy-Way and remand for a new trial.