Clayton LOWE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 76–419–Orl–Civ–Y.

United States District Court,
M. D. Florida,
Orlando Division.

March 7, 1979.

Dale O. Morgan, Dean, Ringers, Morgan & Lawton, P. A., Orlando, Fla., for plaintiff.

Mark L. Horwitz, Asst. U. S. Atty., Orlando, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This case is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This Court finds that it does have jurisdiction of the parties and subject matter under the provisions of that Act.

The plaintiff Clayton G. Lowe was on September 16, 1975 an employee of Sauer, Inc., a subcontractor of Frank Briscoe Company, Inc., a general contractor engaged under a contract with the defendant, United States of America, for construction of facilities at the Orbitor Processing Facility.

The plaintiff's duties were those of a pipe fitter and he started work at the construction site on September 6, 1975. The site was at the Kennedy Space Center, Brevard County, Florida, in an area owned and controlled by the federal government.

In order to perform the work required by the contract with the government, in August 1975 the subcontractor Sauer had moved on to the construction site two trailers. These trailers were placed side by side with approximately 10 feet between them and were generally sitting north south. In the western-most trailer the northern half was used for office purposes by Jack Wilkes, general foreman of the mechanical division, and others. The back half (southern half) of that trailer was used for the storage of tools to be used on the construction project by the employees of Sauer, including the plaintiff. The front half of that trailer was connected by a platform to the trailer situated east of the Wilkes trailer and in the eastern-most trailer were the offices of the general superintendent.

There were steps from the general superintendent's trailer located at the southern end. There were concrete block steps from the western trailer located at the southern end (tool portion). The door to those steps was like a garage door in that it went up and was not the customary swinging type door. The steps consisted of three concrete blocks, two on top of each other and a third lower block. The distance from the trailer to the top of the blocks was approximately 2½ feet and the distance from the trailer floor to the ground was approximately 3½ feet.

On September 16, 1975 at approximately 7:00 o'clock A.M. in the morning, the plaintiff had gone into the trailer, picked up a tool box and was walking out of the trailer when, according to his testimony, the blocks rolled as he stepped down on them, causing him to fall and strike the middle of his back against the trailer floor. As a result he suffered what was eventually determined to be a ruptured disc, necessitating an operation for removal of the disc material and later a second operation for fusion of two discs. He sues the government for his medical expenses, loss of past and future earnings, and past and future pain and suffering.

The plaintiff was the union shop steward on the job and had used the steps a number of times during the ten days that he had been employed prior to the date of the accident. Two days prior to the date of the accident at a safety meeting he had assert-

ed that the steps should be replaced. However, he stated that the steps did not look dangerous to him. At the trial plaintiff stated that his main concern with the steps was a lack of handrails which he felt should be installed for use when carrying tools and pipes from the trailer.

The government under its contract with the general contractor Briscoe had the right to inspect for violations of safe working conditions and to require correction thereof. Mr. John Wortman was the safety inspector employed by NASA who was assigned to oversee and implement safety standards on the construction site of the Orbitor Processing Facility. In that respect he used as minimal standards regulations promulgated by the Occupational Safety and Health Administration as well as those promulgated by the Kennedy Space Center. Approximately one month prior to the date of the accident, Wortman had advised the superintendent of Briscoe to correct the steps which were involved in the accident in this case. It was Wortman's opinion that the steps were not large enough, but he did not remember at the trial if the blocks were loose or not. He did not tell the contractor not to use the steps because at the time that he instructed the correction of the steps he was of the opinion that there was only a slight chance of injury resulting from their use.

■ The facts, as found above, were not vigorously in dispute in this case. The defendant moved for a directed verdict at the close of plaintiff's evidence. Construing the defendant's motion as a motion for involuntary nonsuit pursuant to Rule 41(b), Fed.R.Civ.P., the court deferred consideration of the motion until completion of the trial. *See James v. DuBreuil*, 500 F.2d 155, 156 n. 2 (5th Cir. 1974). Deferral of consideration of the motion until all the evidence was presented had the effect of denying the motion. *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 793 n. 19 (5th Cir. 1975). The defendant put on no evidence and rested its case.

The defendant has argued that a landowner, such as itself, has no liability for injuries sustained by employees, such as plaintiff, of its independent contractor while the employees are working on the defendant landowner's property. Defendant asserts that its only duty is to warn such employees, who have the legal status of invitees, of dangerous conditions on the premises. Plaintiff argues in response that where a landowner gains knowledge of a dangerous situation created by its independent contractor, then liability is incurred if the landowner fails to halt the independent contractor's operation or otherwise remove the danger.

■ Because this case is brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, the law to be applied is that of the state where the alleged tortious act or omission occurred. 28 U.S.C. § 1346(b). The law of the State of Florida must therefore be applied in deciding this case.

Plaintiff relies heavily upon the Fifth Circuit's decision in *Emelwon, Inc. v. United States*, 391 F.2d 9 (5th Cir.) *cert. denied* 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111 (1968). In that case the district court's directed verdict in favor of the government was reversed. The Court of Appeals held that the government could be liable for damage to the plaintiff's crops as a result of aerial spraying operations conducted by an independent contractor employed by the government. In holding there could be liability, the Fifth Circuit cited three Florida cases.

The first, *Maule Industries, Inc. v. Messana*, 62 So.2d 737 (Fla.1953), involved damage incurred by a plaintiff as a result of flooding caused by pumping on defendant's adjacent land. The Florida Supreme Court held that although the pumping was done by an independent contractor working for the defendant, that the defendant was liable. The plaintiff had informed the defendant of the flooding damage and asked that the pumping be stopped. Defendant refused to have the independent contractor stop the operation.

In *Breeding's Dania Drug Company v. Runyon*, 147 Fla. 123, 2 So.2d 376 (1941) the

Florida Supreme Court held that one of the defendants, Jersey Ice Cream Company, was liable for injuries resulting from faulty wiring in the installation of refrigeration equipment, even though the actual installation was done by the defendant's independent contractor. The plaintiff was a third party not employed by the independent contractor. The plaintiff became a victim of electrical shock over a year later as a result of the independent contractor's defective wiring.

The final case cited by the Fifth Circuit in *Emelwon* is *Peairs v. Florida Publishing Co.*, 132 So.2d 561 (1st DCA Fla. 1961). There the Florida First District Court of Appeal reversed the trial judge's directed verdict in favor of the defendant. The plaintiff was injured by wires left in a public parking lot as a result of negligence on the part of newsboys who were independent contractors of the defendant newspaper. The wires were discarded after having been used to wrap bundles of newspapers dropped there at a central distribution point. The court held that the defendant could be liable for its failure to correct the dangerous situation created by its independent contractors.

Each of these cases discussed above is distinguishable from the facts of the case at bar. In none of them was the injured plaintiff an employee of the defendant's independent contractor. Moreover, in each, the negligence complained of was a direct foreseeable result of the job undertaken by the independent contractor. In the case at bar, Sauer's negligent placement of the steps was merely an incidental act in no way connected with the central purpose of the construction contract to build an Orbitor Processing Facility for the defendant government.

The Florida decision which is squarely on point with the facts of the present case is *Lake Parker Mall, Inc. v. Carson*, 327 So.2d 121 (2d DCA Fla. 1976), *cert. denied* 344 So.2d 323 (Fla.1977). The defendant landowner in that case operated a shopping center containing a switchboard that had a defective master disconnect switch. Plaintiff, an employee of an independent electrical contractor hired to install a meter on the switchboard, was killed in an explosion. The switchboard had not been deenergized during the meter installation. If the master switch had been operative, then it could have been used to turn off the switchboard during the installation. The explosion would not have then occurred. The defendant knew of the defective switch, had made previous attempts to have it fixed, and had notified the independent contractor, who was the plaintiff's employer, of the defect.

The Second District Court of Appeal reversed a jury verdict in favor of the plaintiff, holding that the trial court erred in failing to grant the defendant a directed verdict. In reaching this result the Court of Appeal stated that one who hires an independent contractor is not liable ordinarily for injuries sustained by the independent contractor's employees. A landowner has a duty to warn the employees of a dangerous condition on his premises, but this duty to warn is satisfied by notifying the independent contractor's supervisory personnel. 327 So.2d at 123.

In the case at bar the defendant government hired Frank Briscoe Company to do work on the government's property. Briscoe in turn subcontracted part of that work to plaintiff's employer, Sauer, Inc. The defective steps that were the cause of plaintiff's injury were not placed on the land by the government. Rather they were placed there by plaintiff's employer. Once the government inspector saw the steps, he warned Briscoe's superintendent to correct them. Plaintiff himself noted the condition of the steps several days before his accident. He was aware that they might be dangerous; nevertheless, he continued to use them until he was injured.

The court perceives no absolute duty on the part of the defendant to provide a safe place for the plaintiff to work. Plaintiff was not the defendant's employee. Had plaintiff been an employee of the defendant, then the government could have purchased workmen's compensation insurance to protect itself against the plaintiff's claims for on the job injuries.

■ Even though under the contract between the government and the plaintiff's employer the government had a right to conduct safety inspections, this did not constitute an undertaking by the government to prevent all accidents that might occur due to its independent contractor's negligence. The defendant government may not be held liable merely because it gained knowledge of a dangerous condition on the job site, yet failed to affirmatively rectify it. When the government affirmatively acts and helps to create the dangerous condition, then it may be held liable. *See Smith v. United States,* 497 F.2d 500, 505–06 (5th Cir. 1974); *Lipka v. United States,* 369 F.2d 288 (2d Cir. 1966).

■ Plaintiff argues that under Florida law once a potential danger has been recognized then work which constitutes the danger should have been stopped. However, as previously noted, it was not the object of the project which constituted the danger (as was the situation in the cases cited by plaintiff) but rather the condition of the steps. There was no evidence that the steps were in a condition so dangerous that use of them should have been stopped. The plaintiff's own testimony—as previously noted—was to the contrary.

Finally, plaintiff argues that the Florida Supreme Court's decision in *Maldonado v. Jack M. Berry Grove Corp.,* 351 So.2d 967 (Fla.1977) establishes a duty on the part of a landowner to take sufficient precautions to alleviate a dangerous situation created by his independent contractor. The facts of the *Maldonado* case make it distinguishable, however, from the case at bar. The plaintiff in that case was a minor child of an employee of the independent fruit picking crew hired by the defendant landowner to pick its citrus grove. The child was killed when machinery operated by the independent contractor backed over the child.

The Florida Supreme Court held that the trial court improperly granted the grove owner's motion for summary judgment. The court found there was evidence from which a jury might conclude that the defendant grove owner's efforts to discourage the independent contractor's employees from bringing their young children into its groves were insufficient. The operation of the machinery created a dangerous situation in the grove, according to the court, as opposed to a defective condition of the property. 351 So.2d at 968.

The *Maldonado* case did not involve injury to an independent contractor's employee. A third party, one of the employee's children, was instead the plaintiff in that case. Operation of the machinery was necessary in order to pick the groves and injuries from the machinery were frequent. 351 So.2d at 968 n. 1. The negligence of the independent contractor's machine operator that resulted in injury to the third party was a direct foreseeable result of the job undertaken by the independent contractor. In contrast, the defective steps in the case at bar were merely an incidental condition created on the premises and were not a necessary or inherent ingredient of the job undertaken by the independent contractor to do construction work for the government.

■ Even if the holding of *Maldonado* were to apply to the case at bar, which this court concludes it does not, then the defendant would still not be liable. This is because the court finds as the trier of fact that the efforts undertaken by the government safety inspector to have Briscoe Company correct the steps were both sufficient and reasonable under the circumstances. Any duty owed by the defendant to the plaintiff was completely discharged by the warning given plaintiff's employer to correct the defective steps. That warning precludes a finding of negligence on the defendant's part. To stop the work until the steps were corrected would have been unreasonable. The defendant himself testified that although he complained of the steps at a union meeting several days before the accident, he did not consider them particularly dangerous.

The court therefore concludes that the plaintiff in this case has failed to prove a right to recover any damages from the defendant. The court finds no negligence on

the part of the defendant government. The evidence presented as to damages, therefore, need not be considered. Each party shall bear its own costs. Separate judgment will be entered in accordance herewith.