401 So.2d 1375 (1981)
Ben C. PADILLA, Appellant,
v.
GULF POWER COMPANY, Appellee.
No. SS-24.
District Court of Appeal of Florida, First District.
August 13, 1981.
Jack Chisolm, of Hipsh & Chisolm, P.A., Pensacola, for appellant.
Robert P. Gaines, of Beggs & Lane, Pensacola, for appellee.
ROBERT P. SMITH, Jr., Judge.
Padilla appeals from a summary final judgment for Gulf Power in this action for personal injury damages. Factual issues as yet unresolved require reversal.
Padilla, an employee of Foster-Wheeler Energy Corp., a maintenance contractor, was injured while working for Foster-Wheeler on Gulf Power's premises. Foster-Wheeler was replacing a motor on a coal crusher at Gulf Power's steam electric generating plant, using a fork lift truck and extensible boom owned by Gulf Power and supplied to Foster-Wheeler for precisely the kind of heavy lifting operation Foster-Wheeler's employees, including Padilla, were engaged in when he was injured. Padilla's hand was crushed by a falling motor when the boom in its extended position broke under the motor's excessive weight. The manufacturer warned of the extended boom's limited lifting capacity on a decal *1376 that was attached to the boom when Gulf Power purchased the truck, but that warning was obliterated at the time Padilla or his co-workers overloaded the extended boom on this occasion. Previously the boom had broken due to an overload, and Foster-Wheeler, at Gulf Power's request, made the repairs. When it added steel reinforcement to the boom base, Foster-Wheeler covered up the warning decal that listed the lifting capacities of the extensible boom in its extended and retracted positions. There is no evidence that Gulf Power knew this before the accident.
Padilla's remedy against Foster-Wheeler was of course under the Workers' Compensation Act, Chapter 440, Florida Statutes. Against Gulf Power, Padilla's allegation was that Gulf Power negligently failed to maintain the forklift and boom assembly in a reasonably safe condition and failed "to label said extensible boom with its maximum capacity so as to put employees on notice of said capacity."
In reviewing the summary judgment record, we hold preliminarily that a jury well could have found Foster-Wheeler negligent in covering up the manufacturer's weight capacity warning decal. The manufacturer affixed the decal to the machine for a purpose, that being to notify users who were otherwise unwarned that the extensible boom could collapse if loaded beyond its stated design limits. By analogy to decisions finding actionable negligence in conduct by the owner of machinery nullifying the manufacturer's safety device in potentially dangerous machinery,[1] we think a jury well could have found negligence in Foster-Wheeler's obliteration of the manufacturer's warning decal. While not disputing Foster-Wheeler's negligence, the trial court exonerated Gulf Power on the ground that Foster-Wheeler was an independent contractor for whose negligence Gulf Power was not responsible.
Because the parties assume it, we too assume that the relationship between Foster-Wheeler and Gulf Power was generally that of independent contractor and contractee, and that the contractor, Foster-Wheeler, was typically autonomous in its right to control the manner of its performance of the contracted maintenance services.[2] This record does not reveal the actual contract between the parties, and the other evidence is sparse on the issues of control and the right to control maintenance activities. Within the assumed relationship of independent contractor and contractee, then, Gulf Power purchased a fork lift machine necessary for the maintenance of its plant and turned that machine over to Foster-Wheeler.
Green v. Sansom, 41 Fla. 94, 103, 25 So. 332, 335 (1899), fixes Gulf Power's responsibility in undertaking to furnish machinery for use by Padilla, an independent contractor's employee. The Court there held that the injured Sansom was shown to be Green's servant, not the servant of an independent contractor engaged by Green, so (in those days before workers' compensation) Sansom was held entitled to recover for any negligence by his master, Green, in furnishing him a defective rope. Yet the Court held also that Green, having undertaken to furnish the tools necessary for the work, would have had the same duty toward Sansom had he been found, instead, to be the employee of an independent contractor engaged to do the work:
Where the employer undertakes to furnish his own employee, or those of an independent contractor, some of the implements or instrumentalities for executing *1377 the required work, he thereby assumes a duty to exercise ordinary and reasonable care, measured by the surrounding circumstances, to provide such instrumentalities as will be reasonably safe and suitable. (citations omitted)
Green further illustrates how the contractee such as Green or Gulf Power may satisfy its undertaken duty "to provide such instrumentalities as will be reasonably safe and suitable" for use by affected employees. The Court reversed Sansom's judgment against Green, holding that the rope selected by Sansom from among those supplied by Green was apparently sound, containing no discoverable defect when supplied, but that such ropes rotted after long use. Judging the conduct of Green as of the time he initially supplied the rope, the Court found no negligence. The decision thus suggests that a contractee may be liable for negligently supplying his contractor's employee an unfit tool or machine, but not liable for failure to monitor its continued suitability while in the use and control of the independent contractor's employees. This rule is in accord with authorities reasoning that a contractee supplying machinery to an independent contractor has, under such an arrangement, no effective control over its maintenance and repair.[3]
This record contains no comparable showing that Gulf Power simply bought and furnished the forklift boom assembly to Foster-Wheeler, surrendering with the machine all power to control what, when, how and by whom repairs to the machine were to be made.[4] Gulf Power's answers to interrogatories revealed that in purchasing the machine Gulf Power required the manufacturer to modify the boom to receive the forks, and that Gulf Power later contracted with Randolph Yale Industrial Truck Company to replace and repair various components of the forklift. Gulf Power's plant manager Lee testified that "we performed some electrical maintenance on the forklift, Gulf Power did," and Foster-Wheeler's superintendent Miller testified that Gulf Power had and exercised control by authorizing repairs and specifying who should make them:
A. We have sent the forklift out and had it repaired before.
Q. Foster-Wheeler did this?
A. Well, no sir. Gulf Power was the one that paid for having it repaired. The forklift belongs to them.
Q. Did you get some sort of authorization before sending it out?
A. Yes. Well, they generally send it out theirselves when it has to be repaired.
*1378 And before Foster-Wheeler made the repairs that covered up the manufacturer's warning decal, Mr. Miller testified, he checked first with Gulf Power's manager:
Q. All right. Did you have Gulf Power's authorization to repair this thing or did you just go ahead and repair it?
A. We just went ahead and repaired it, I presume. I did talk to them about it and he asked me if we could fix it and I told him yes, so we went ahead and fixed it. Anything like this, I always talk over with Mr. Lee out there.
Far from showing adequately for summary judgment that Gulf Power relinquished to its contractor the power to decide by whom and how Gulf Power equipment should be repaired, this record suggests the basis for a contrary jury finding: that Gulf Power, choosing to own the machines required for its regular plant maintenance by a contractor who used those machines for that purpose and no other, saw to their repair in one way or another  sometimes sending machines out for repair, sometimes allowing Foster-Wheeler to repair, but always retaining and being understood as retaining power to decide all significant questions pertaining to the repair of its equipment. Thus did Gulf Power penetrate and occupy some of the realm of its putative independent contractor. Having thus retained significant control over Foster-Wheeler's employees in the activity that contributed (so a jury might find) to Padilla's injury, Gulf Power's responsibility for the negligence of those employees is the same as if Gulf Power's own employees had obliterated the warning decal, or if Gulf Power sent the machine out to an independent welder who obliterated the warning decal, in consequence that Gulf Power, furnishing the machine anew to Foster-Wheeler's employees, negligently failed "to provide such instrumentalities as will be safe and suitable" for their use. Green, supra.
A contractee's true relinquishment of power to control the details of his contractor's work is not to be mistaken for its counterfeit, a contractee's negligent failure to exercise his retained power to control. Several evidentiary factors converge to present a jury question on this issue: Gulf Power's purchase and adaptation of the machine to do its particular maintenance; Gulf Power's need for the maintenance, and for the machine, in its regular business of operating the plant from day to day; the machine's exclusive use for that purpose by a contractor's employees who went daily to work at Gulf Power's premises to maintain Gulf Power's plant with Gulf Power's equipment; and Gulf Power's retention of the power to control the repair of its equipment. The last mentioned element is the indispensable one; the preceding list both points to and derives its significance from Gulf Power's retention of the power to control. See F. Harper and F. James, Law of Torts, § 26.11:
If we are looking for risks fairly allocable to an enterprise then there is much significance in the question "whether or not the work is a part of the regular business of the employer." The real question in all independent contractor cases is whether a man may "farm out" or "lop off" some of his affairs and escape liabilities in connection with them. No general policy forbids this... .
Now this privilege to farm out has its limits, . .. but within those limits the primary question is whether the task which caused the injury was actually and in good faith farmed out to another... . As a generalization it may be said that an employer has farmed out or turned over a task to another where he has relinquished control over it.
We do not proceed on the idea that Gulf Power, owner and contractee of maintenance work requiring the operation of a forklift crane assembly, is liable to Padilla for any negligence of another Foster-Wheeler employee in performing that inherently dangerous work. If that were the case, the negligence of Foster-Wheeler's employee who operated and overloaded the extended boom, without semblance of participation by Gulf Power, would be more obviously significant than the antecedent negligence of Foster-Wheeler's employee *1379 who, acting as well for Gulf Power (so we posit on this record), negligently covered up the weight warning decal mounted on the machine.[5] This case is not so simply resolved, because Florida Power and Light Co. v. Price, 170 So.2d 293 (Fla. 1964), held that the owner of premises requiring inherently dangerous maintenance work  there, construction of an electrical distribution system  is not liable through respondeat superior to the injured employee of the independent contractor who negligently performed the work. The Court held, 170 So.2d at 297:
We do not believe the law respecting dangerous instrumentalities or inherently dangerous work ipso facto renders defendant [FP&L] liable under the particular circumstances of this case.
The Court thus reaffirmed that the owner/contractee has nondelegable duties "to third party members of the public" in contracting for the performance of inherently dangerous work and the operation of dangerous instrumentalities, see also General Portland Land Development Co. v. Stevens, 395 So.2d 1296 (Fla. 4th DCA 1981); but the Court declined to apply that doctrine against the owner/contractee in favor of the independent contractor's employee who was injured as the result of fellow servant negligence in performing the work. The owner/contractee is not liable, said the Court,
... absent any allegation or showing of an act of negligence or omission of duty or proper care on the part of [the owner/contractee]... . [170 So.2d at 298]
We intend no contradiction of or lack of deference to Price. Fully acknowledging the authority of that decision, we simply recognize that Price is predicated on a factual premise that in the nature of things is subject to dispute, is disputed here, and must be established without dispute if a summary judgment is to be sustained on the principle that the owner/contractee of inherently dangerous work is not "ipso facto" liable to an independent contractor's employee injured by a negligent fellow employee. The factual premise of that principle is that in the activity causing the injury the putative independent contractor was truly that, which is to say, he acted and was empowered to act independently of the owner/contractee under the contractual arrangement between them. Price expressed that factual premise this way, 170 So.2d at 298:
The independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies... .
Our judgment, as we have said, is that there exists a genuine factual dispute over whether Gulf Power, ceding Foster-Wheeler independence of judgment in the detailed performance of the required maintenance, ceded also the same measure of independence in the matter of repairing Gulf Power's maintenance equipment. Given the test for determining the existence of an independent contract relationship, text at note 2 supra, and the realities of a permanent business relationship such as exists in this case, it is not at all impossible to conceive that Foster-Wheeler's employees were in certain functions independent of control by Gulf Power and in others directly responsive as veritable agents. The relationship between contracting parties in regard to the activity complained of is to be determined by the contract and by the parties' operations in fact under the contract; inquiry cannot be shut off by simple interposition of the term "independent contractor." We are much persuaded by the reasoning of Toomey v. Donovan, 158 Mass. 232, 236-37, 33 N.E. 396, 398 (1893), in which the Massachusetts Supreme Judicial Court found a jury issue on the question of whether Toomey, clearly an independent contractor in operating a stock fitting room *1380 in the owners' factory, acted instead as their agent in keeping the stock-fitting machines in safe repair, thus making the owners vicariously liable for his negligence:
[T]here was evidence which would have warranted the jury in finding that Toomey was intrusted by the [owners] with the duty of seeing that the machine was in proper condition. The fact that he also occupied towards them the relation of a contractor would not relieve the [owners] from liability for his negligence in seeing that the machine was in proper condition. One person may sustain different relations to another, as well as different relations to different persons.
Because unresolved factual issues precluded entry of the summary judgment, the judgment is
REVERSED.
SHAW, J., concurs.
BOOTH, J., dissents, with opinion.
BOOTH, Judge, dissenting:
I would affirm the judgment below.
The complaint alleges negligence on the part of Gulf Power Company in: (1) failing to maintain the boom in good condition; (2) improperly modifying the boom; (3) failing to test the boom for load capacity; and (4) failing to label the boom as to load capacity. All of the foregoing alleged negligent acts were those of Foster Wheeler, Inc., an independent contractor. Under the law of Florida, Gulf Power is not vicariously liable to Foster Wheeler's employee for the negligence of Foster Wheeler. Florida Power and Light Company v. Price, 170 So.2d 293 (Fla. 1964).
Nor is there a basis for holding Gulf Power directly liable to the employee of Foster Wheeler for actual negligence. The complaint does not allege that the forklift and boom, as purchased by Gulf Power and turned over to Foster Wheeler several years before the accident, were defective.[1] The complaint does not allege that Gulf Power had a duty to furnish and maintain equipment fit and suitable for the particular work in progress or that Gulf Power undertook to supervise the use of the forklift or boom. The evidence on motion for summary judgment failed to show actual negligence on the part of Gulf Power.
The boom in question was only one piece of lifting equipment available at the job site. Other equipment capable of lifting various weights up to 30 tons was also available. It is uncontradicted that Foster Wheeler knew the limitations on the boom used in its extended position and knew that the boom was capable of lifting heavier loads if the forklift was driven closer to the object to be lifted so that the extension portion of the boom remained inside the modified "sleeve." Since Foster Wheeler's knowledge of the dangers of overloading was equal, if not superior, to that of the owner, the duty to warn was not breached.[2] The owner/contractee does not have a duty to warn the employees of the independent contractor where the contractor's supervisory personnel are aware of the danger.[3]
At the time of the accident, Foster Wheeler's personnel made the decision to lift a motor weighing approximately 3,000 pounds with the boom extended and to have a man (plaintiff) manually remove the shims beneath the motor while the motor *1381 was thus suspended. The motor could have been safely lifted either with the boom extension inside the sleeve or by using the prongs of the forklift itself without the boom. However, extra time and effort by the Foster Wheeler crew would have been required to remove objects blocking the way which prevented the forklift from being driven close enough to lift the motor without the boom extension. The decision to use the boom extension, rather than to clear away the objects blocking the pathway to the motor, was made by Foster Wheeler without the knowledge or participation of Gulf Power.
The break in the boom occurred in the extensible portion near, or approximately at, the same spot as the prior break, which had been welded back together by Foster Wheeler's millwrights. There was testimony of modification or "beefing up" of the stationary part of the boom and that a new boom extension had been purchased. At the time of the accident, however, the stationary portion did not fail, and the new boom was not in use. The boom modifications were not a factor in the accident.
The controlling law is stated by the Florida Supreme Court in Florida Power and Light Company v. Price, supra, which dismissed the complaint of the employee of an independent contractor in a suit for personal injuries against the owner/contractee. Plaintiff, the employee of Harlen Electric Company, independent contractor, was working on a power pole when a co-employee allowed a "jumper" wire to come close enough to cause an electrical arc which energized the wire on plaintiff's pole, causing his injuries. The Complaint in that case alleged actual negligence on the part of the owner/contractee in failing to supervise the work, failing to insulate wires and de-energize terminal points, failing to insulate certain switches on the wires on plaintiff's pole, and failing to provide a safe place to work. The complaint also alleged vicarious liability for the negligence of the independent contractor under the dangerous instrumentality and the inherently dangerous work doctrines. The District Court[4] held that the allegations of actual negligence were insufficient but that a cause of action was stated based on vicarious liability under the dangerous instrumentality and the inherently dangerous work doctrines.
The Florida Supreme Court in Price, supra, held that the owner[5] is not vicariously liable to the employees of the independent contractor for the negligence of the contractor. The Supreme Court ruled that neither respondeat superior, the dangerous instrumentality or dangerous work doctrines were applicable to make an owner/contractee vicariously liable for the negligence of the independent contractor in a suit by the employees of the contractor. The Supreme Court expressly disapproved the District Court's holding that the owner/contractee owed the same duty to the employees of the independent contractor as to third parties.[6] Concerning the basis for the rule precluding the owner's liability for the contractor's negligence, the court held (170 So.2d at 298):
The independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies and is aware or presumed to be aware of the usual hazards incident to the performance of his contract. Unless and until it is shown the contracting owner *1382 by positive act of negligence or negligent omission on his part causes injury to the independent contractor or to the latter's employee or employees, such owner will not be held liable. The employees of the independent contractor do not become the employees of the contracting owner within the contemplation of Chapter 769 F.S., nor are they under his direction and control. Their negligent acts do not become his responsibility under the doctrine respondeat superior. Thus it may be said the exception to the doctrines grows out of the relationship created by the independent contract and the assumption of risks that are necessarily concomitant. Such an exception would not be applicable where members of the general public are injured since they are not embraced in the relationship created by the independent contract.
The Price case, supra, remains the law, and there is no case in this state imposing the duty on the owner sought to be imposed here. In the absence of a special undertaking not alleged or shown in the instant case, the owner does not have a duty to continually maintain a chattel furnished, to supervise its use, or to ensure the safety of those using it. The duty of the owner is not that of a manufacturer and clearly can be no greater than that of one who leases a chattel for use in the business of another or one who leaves his automobile with an independent contractor for repair. In both cases, the lessor/bailor, even of a dangerous instrumentality, is not liable to the employee of the lessee/bailee due to the negligent use of the chattel by a co-employee. Fry v. Robinson Printers, Inc., 155 So.2d 645 (Fla. 2d DCA 1963); Petitte v. Welch, 167 So.2d 20 (Fla. 3d DCA 1964); Iglesia v. Floran, 394 So.2d 994 (Fla. 1981); Zenchak v. Ryder Truck Rentals, 150 So.2d 727, 728 (Fla. 3d DCA 1963), cert. discharged, 164 So.2d 200 (Fla. 1964). A chattel which is leased to one for use in his business or is turned over to a repairman is under the control of the lessee or repairman. Under those circumstances and in the instant case, there is no liability on the part of the owner to the employees of the independent contractor who are injured due to the negligence of the contractor.
The majority rule is well stated in a number of federal decisions: Cady v. E.I. DuPont de Nemours and Company, 437 F. Supp. 1030 (D.C.Tex. 1977), affirmed, 618 F.2d 782 (5th Cir.1980); Lowe v. United States, 466 F. Supp. 895 (M.D.Fla. 1979), affirmed, 611 F.2d 76 (5th Cir.1980); and Gulf Oil Corporation v. Bivins, 276 F.2d 753 (5th Cir.1960).[7]
In Cady v. E.I. DuPont, etc., supra, the court granted a directed verdict in favor of the owner of a structure in a suit by an employee of an independent contractor. In that case, the owner both designed and supplied the engineering specifications to the independent contractor who did the construction. During the course of the construction, the independent contractor altered the specifications for the setting of the steel columns, and this resulted in the tilting of a column, causing injuries to an employee of the contractor. Plaintiff proved that DuPont had general supervisory responsibility over the structure and knew of the altered specifications. The Federal Court held, however, that DuPont did not know the independent contractor would fail to supply the additional support for the column during construction that would have made the altered procedures safe, holding (437 F. Supp. at 1033):
There is no evidence that DuPont [owner] knew or should have known that Zackary [independent contractor] would not use independent support during construction... . DuPont has a right to expect *1383 that Zackary will perform its responsibilities in a safe and workmanlike manner and take proper care to assure the safety of its employees. The instability without guy wires or the "cherry picker" is, according to the undisputed testimony, as readily apparent to Zackary and its engineers as to DuPont and its engineers. (emphasis supplied)
In the Cady case, supra, plaintiff contended the owner's knowledge of the alteration, coupled with the owner's failure to object or to waive specifications "created a hazardous condition." The court rejected this basis for liability, holding (437 F. Supp. at 1034):
The foundation of any duty to warn is in a determination of which party is in the best position to be aware of the risk and issue the warning. [citations omitted] Under circumstances where the danger is not open and obvious and is not known to the invitee, a duty to warn is imposed on the owner-occupier. However, the facts presented by the plaintiff do not create such a duty. It is undisputed that the invitee H.B. Zackary created the dangerous condition either by not following the specifications or by failing to use independent means of support for column C-3 during erection... .
The construction ... and the manner in which DuPont's design was implemented was under the direct supervision and control of Zackary. The danger having arisen out of that construction, the duty to warn the plaintiff is that of his employer and not that of the owner-occupier. [citations omitted]
In the Cady case, supra, the owner supplied non-defective engineering specifications to the contractor, who then altered those specifications with the knowledge of the owner. The alteration created a hazard only if the contractor failed to take certain precautions in performing the work. Here, the owner supplied a piece of nondefective equipment to be used by the contractor. The contractor broke the equipment, welded it back, and, in the course of the repair, covered the weight limit sticker. Neither the repairs nor the covering of the weight limit sticker created a hazard so long as the contractor knew the weight limitations and took precautions not to exceed the capacity of the equipment. To paraphrase the holding of Cady, supra, the owner "has a right to expect" that the independent contractor "will perform its responsibilities in a safe and workmanlike manner and take care to assure the safety of its employees." In both cases, the contractor created a condition which subsequently caused the accident.
In Lowe v. United States, supra, the Federal Court, applying Florida law, held the owner not liable to the employee of the independent contractor who fell on defective steps erected on the owner's premises by the independent contractor. In that case, the contract gave the owner the right to conduct safety inspections. The court held (466 F. Supp. at 898-899):
The court perceives no absolute duty on the part of the defendant to provide a safe place for the plaintiff to work. Plaintiff was not the defendant's employee. Had plaintiff been an employee of the defendant, then the government could have purchased workmen's compensation insurance to protect itself against the plaintiff's claim for the job injuries.
Even though under the contract between the government and the plaintiff's employer the government had a right to conduct safety inspections, this did not constitute an undertaking by the government to prevent all accidents that might occur due to the independent contractor's negligence. The defendant government may not be held liable merely because it gained knowledge of a dangerous condition on the job site, yet failed to affirmatively rectify it.
On appeal in the Lowe case, the United States Court of Appeal, Fifth Circuit, affirmed, citing Lake Parker Mall, Inc. v. Carson and Florida Power and Light Co. v. Robinson, supra, for the rule that the duty of the landowner to warn of a dangerous condition is satisfied by notice to the independent contractor and that the owner *1384 "may not be held liable just because it retains the right to require adherence to safety regulations."
In view of the foregoing authorities,[8] I respectfully dissent from reversal of the judgment below.
NOTES
[1] E.g., Trail Builders Supply Co. v. Reagan, 235 So.2d 482 (Fla. 1970) (employer/owner who removed safety bar from truss roll press liable for indemnity to manufacturer sued by injured employee); Fort Lauderdale Country Club, Inc. v. Winnemore, 189 So.2d 222 (Fla. 4th DCA 1966) (golf club found negligent in supplying injured golfer cart after removing manufacturer's rubber cover from brake pedal); Smith v. Hobart Mfg. Co., 302 F.2d 570 (3d Cir.1962) (employer's negligent removal of handguard on meat grinder held superseding cause of employee's injury, barring manufacturer's liability).
[2] E.g., Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla. 2d DCA 1960); Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503 (Fla. 1927).
[3] See, e.g., 57 C.J.S. Master and Servant § 604 at p. 377 (1948):

[I]t has generally been held that if reasonably safe appliances are furnished, and they afterward become defective, the contractee is not liable unless the contract requires continued supervision of the appliances and the keeping of them in repair, in which event a breach of duty by the contractee will render him liable for injury to the contractor's servant resulting therefrom.
Among the decisions cited by the Corpus Juris Secundum are Kiser v. Suppe, 133 Mo. App. 19, 29, 112 S.W. 1005, 1009 (1908), (exonerating the mineowner who provided a cable to his independent contractor who then failed to "keep it safe," resulting in an employee's injury: "Without any right to inspect and repair [the cable] it would be most unjust to call him [the mineowner] to account for the neglect of the contractor to perform that duty."); Toomey v. Donovan, 158 Mass. 232, 33 N.E. 396 (1893) (holding there was a jury question of whether the defendant owner of the supplied machines "engaged with Toomey [the contractor] to keep them in repair for use by his workmen" and agreed in that manner to "keep them in repair," so exposing the owner to liability for neglect to repair.); Moore v. Rawls, 196 N.C. 125, 144 S.E. 552 (1928) (holding that the defendant/owner, furnishing a log skidding machine for the contractor's use in logging operations on the owner's property, had a duty to use reasonable care in furnishing equipment that it should be safe and suitable, and "to keep such appliances in safe condition," and finding no neglect of duty); and Johnson v. Spear, 76 Mich. 139, 42 N.W. 1092 (1889) (holding that the defendant dock owner, not the independent contractor unloading coal at the dock, retained responsibility for repairs of chains for a hoisting appliance and was thus liable to the contractor's servant for injury caused by a defective chain.)
[4] See generally 5 Am.Jur. Proof of Facts 2d, Employers' Retention of Control over Independent Contractor, § 18 at 251 (1975).
[5] That the negligence of the repairer of the forklift may have been less a causative factor than the negligence of the operator is inconsequential for summary judgment purposes. Compare Hethcoat v. Chevron Oil Co., 364 So.2d 1243, 1245 (Fla. 1st DCA 1978) (concurring and dissenting opinion), rev'd, 380 So.2d 1035 (Fla. 1980), on remand, 383 So.2d 931 (Fla. 1st DCA 1980).
[1] Compare Tillery v. Standard Sand & Silica Co., 226 So.2d 842 (Fla. 2d DCA 1969), where owner supplied a latently defective welding machine to an employee of an independent contractor to weld something located high above floor level without warning that, as owner knew, the machine had previously shocked those using it.
[2] Superior knowledge of the owner/contractee is basis of his duty to warn: Rist v. Florida Power & Light Company, 254 So.2d 540 (Fla. 1971); Melton v. Estes, 379 So.2d 961 (Fla. 1st DCA 1979); Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla. 1979); Ayala v. J.M. Fields, 390 So.2d 166 (Fla. 5th DCA 1980).
[3] Lake Parker Mall, Inc. v. Carson, 327 So.2d 121, 123 (Fla. 2d DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977); Florida Power & Light Co. v. Robinson, 68 So.2d 406, 411 (Fla. 1953). Compare, Warren v. Hudson Pulp & Paper Corp., 477 F.2d 229 (2d Cir.1973), where owner's knowledge of danger was found to be superior.
[4] Price v. Florida Power and Light Co., 159 So.2d 654 (Fla. 2d DCA 1963).
[5] The power company was owner of the poles and wires where the work was being performed as well as the dangerous instrumentality, electricity, which caused the plaintiff's injuries.
[6] Florida Power and Light Co. v. Price, 170 So.2d 293, 297 (Fla. 1964):

[T]he duties which a contractee owes to employees of the independent contractor are less than those owing to third persons; and consequently his liability to such employees is not as extensive as his liability to third persons, that is, the act may be such as to render the contractee liable to third persons although it would not make him liable to a servant of the contractor. [57 C.J.S. Master and Servant § 600]
Compare, Maldonado v. Jack M. Berry Grove Corporation, 351 So.2d 967 (Fla. 1977), third parties (minor children of employees) injured on owner/contractee's premises.
[7] Texas, like Florida, follows the rule of Storm v. New York Telephone Co., 270 N.Y. 103, 200 N.E. 659, as is well stated in Gulf Oil Corporation v. Bivins, 276 F.2d at 758:

We are persuaded by both precedent and principle that the owner or occupier of particular property has a duty to warn the employees of an independent contractor who has undertaken to do work on the property, of dangers that are hidden on or inhere in that property, and that this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger.
[8] Accord, Horton v. Gulf Power, 401 So.2d 1384 (Fla. 1st DCA 1981).