Marion F. COLE, Personal Representative of the Estate of Deborah D. Eisenhut, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. PCA 83–4106–WS.

United States District Court,
N.D. Florida,
Pensacola Division.

Dec. 24, 1986.

William K. Jennings, Jennings & Harrell, Destin, Fla., John C. Cooper, Douglass, Davey, Cooper & Coppins, Tallahassee, Fla., for plaintiff.

Fred M. Johnson, Tallahassee, Fla., for lienholder.

Thomas Banjanin, U.S. Atty., Pensacola, Fla., Jerome A. Madden, Trial Atty. Torts, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

### ORDER

STAFFORD, Chief Judge.

This cause comes before the court on defendant's motion for summary judgment (document 71). Plaintiff has brought this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, 1346(b) (1982). Both parties have filed extensive memoranda addressing the legal issues involved (documents 72, 78, 83, 89 and 92).

### I.

On February 28, 1980, plaintiff's decedent, Deborah D. Eisenhut, was killed while working on a military ordnance contract between her employer, an independent contractor known as Ordnance Research, Inc. ("ORI"), and the U.S. Army Armament Research and Development Command ("ARRADCOM," aka "Picatinny Arsenal"). The contract was for the purchase of smoke cartridges manufactured by ORI for use in the Army's mortar practice rounds. Deborah Eisenhut was loading a cartridge with a pyrotechnic compound known as ORI composition 119G when it exploded, killing her instantly. The incident occurred on the premises of ORI.

Composition 119G was developed in late 1979 by ORI, who owned its trade rights, in response to ARRADCOM's need for a mortar practice round that upon impact would make a flash and signature smoke. The Army used the rounds under various lighting conditions as a troop training device. It was the ignition of composition 119G within the otherwise inert mortar round that provided the flash and signature smoke.

At first, ORI sold 119G to another independent contractor, Dayron Corporation, which produced the mortar round for ARRADCOM. Later, having received samples of composition 119G from ORI for testing, ARRADCOM gave preliminary approval of 119G despite the knowledge and recommendation of some ARRADCOM personnel that its use should be discontinued due to its oversensitivity and the risk of explosion. Thereafter, on or about December 12, 1979, ARRADCOM issued a purchase order contract for 1500 smoke cartridges containing 119G for further testing. It was this contract that Deborah Eisenhut was working on at the time of her death.

In order to establish "uniform policies and procedures relating to the procurement of supplies and services under the authority of Chapter 137, Title 10 of the United States Code" the Assistant Secretary of Defense (Installations and Logistics) issued the Armed Services Procurement Regulation ("ASPR"). See ASPR § 1–101 (September 7, 1976). As a matter of policy, the safety requirements of the "DOD Contractors' Safety Manual for Ammunitions, Explosives, and Related Dangerous Material" ("Safety Manual") were to be applied to all contracts involving ammunition and explosives. This policy was accomplished by the insertion of a prescribed safety clause into the contract. The omission of the clause and, consequently, the elimination of the requirements of the Safety Manual, must be approved by the Head of the Procuring Activity ("HPA"), in this case AARADCOM. ASPR § 1–323.1(a), (c) (Oct. 28, 1977).

The prescribed safety clause was omitted from the ORI–ARRADCOM contract by decision of the Chief of the Support Contracting Division, Procurement Directorate, ARRADCOM. As a result, the safety requirements of the manual, which obligated both parties to observe various safety procedures, were not complied with.

ASPR § 1.323.1(c) gave ARRADCOM, as HPA, the discretion to either omit the safe-

ty clause from contracts entirely, thereby eliminating the application of the Safety Manual to the contract, or to include the clause but waive any mandatory requirements of the Safety Manual. In its discretion, ARRADCOM's policy decision was to make the requirements of the Safety Manual mandatory at all contractor owned and operated facilities *except* when orders were for an amount less than $10,000 and placed under the ASPR small purchase procedures, but only so long as those orders were for "standard commercial items" and included specific shipping instructions. *See* ARRADCOM Supplement 1 to DARCOM—R385–7 at 2 (Sept. 15, 1978) (Section 4.1 *Policy*, (a)(b)). The term "standard commercial item" was not defined.

## II.

### A.

ARRADCOM's determination as to the extent to which it would supervise contractor safety procedures was a basic exercise of discretionary regulatory authority. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). That determination required ARRADCOM to balance the safety objectives sought to be obtained by the application of the Safety Manual to munitions contracts, "against such practical considerations as staffing and funding." *Id.* at 820, 104 S.Ct. at 2768; Affidavit of Stella Bencel, Defendant's exhibit 5. It is undisputed that those considerations—*i.e.*, the reduction of the high costs of administration and personnel associated with small purchase orders—were one aim of ARRADCOM's procurement policy. *See generally* 10 U.S.C. § 2301 (1982) and as amended (1984). Furthermore, the propriety of administrative decisions regarding the expenditure of federal funds, like those regarding safety regulations, are protected discretionary acts under the discretionary function exception to the FTCA, § 2680(a). *Varig Airlines*, 467 U.S. at 809–810, 104 S.Ct. at 2763–64.

Likewise, those charged with responsibility for carrying out ARRADCOM's procurement policy in accordance with ARRADCOM's directives also are protected by the discretionary function. *Varig Airlines*, 467 U.S. at 820, 104 S.Ct. at 2768; *Dalehite v. United States*, 346 U.S. 15, 33, 36, 73 S.Ct. 956, 966, 968, 97 L.Ed. 1427 (1953). It is significant that "standard commercial item" was not defined. Inasmuch as testimony on both sides demonstrates disagreement as to what constitutes a "standard commercial item," that determinant necessarily is not "a fixed or readily ascertainable standard" on which ARRADCOM's contracting officers could reliably act [in effecting ARRADCOM's procurement policy]. Consequently, the decisions the contracting officers make are discretionary within the § 2680(a) exception. *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523, 1529 (11th Cir.1985); *Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979).

"Standard commercial item" was not meant to be isolated and considered in the abstract. Rather, it was meant to be considered in light of ARRADCOM's safety objectives and fiscal constraints, and left to the policy judgment of the contracting officer. It is undisputed that that is precisely what occurred in this case. *See* Deposition of George Curran, pp. 23–33, 56–65. Plaintiff's exhibit G; Affidavit of Stella Bencel, Defendant's exhibit 5. "Standard commercial item" describes an item, the safe manufacture of which ARRADCOM had less interest in regulating based upon consideration of a variety of potential, unspecified economic, commercial and safety factors left within the discretion of the contracting officers. *See* Curran Deposition at 24–32, 60–65. Thus, "standard commercial item" was meant to handle not only the "black or white" cases where .22 caliber rifle bullets were being purchased, but also gray cases such as this where an understanding of ARRADCOM's policy was necessary in making the purchase decision.

The professional discretion of the contracting officers here involved economic and safety-regulatory policy considerations.

The decision not to apply the Safety Manual to the ORI contract "rested on policy judgments and a balancing of practical considerations rather than scientific or technical information." *Alabama Electric Cooperative*, 769 F.2d at 1529, n. 2. Whether or not those officers negligently exercised or abused their discretion is irrelevant. *Dalehite*, 346 U.S. at 33–34, 73 S.Ct. at 966–67.

The case of *McMichael v. United States*, 751 F.2d 303 (8th Cir.1985), upon which plaintiff chiefly relies, is inapposite. There the government had already "exercised its discretion to adopt safety rules and to conduct safety inspections" by applying the Safety Manual to the contract and mandating the continuous presence of three on-site safety inspectors performing a 51 step safety compliance review. *Id.* at 305. Moreover, in its previous opinion in the same case the same court agreed "that the awarding of the government contract and the promulgating of the [Safety Manual] are exempt discretionary functions" because they "were planning level decisions involving the weighing of various facts and policies and, hence, the United States is not liable under the FTCA even if the responsible government employees performed their duties negligently." *Madison v. United States*, 679 F.2d 736, 739 (8th Cir. 1982).

Accordingly, to the extent that the plaintiff's claim is for the negligent failure of the Army to apply and enforce the provisions of the Safety Manual, it is barred by 28 U.S.C. § 2680(a).

**B.**

 Under Florida law, an employer's duty to halt work or remove the danger that the employer discovers has been created by his independent contractor, is a duty that has been limited to persons other than the contractor's employees. *Lowe v. United States*, 466 F.Supp. 895 (M.D.Fla. 1979), *affirmed*, 611 F.2d 76 (5th Cir.1980). Furthermore, even if the provisions of the Safety Manual had been applied to the ORI contract, notification of noncompliance with them as well as the manner of enforcement was discretionary, not mandatory. Moreover, the safety of ORI employees and property was the sole responsibility of ORI. *See* Safety Manual, § 103, Plaintiff's exhibit 8; ASPR § 7–104.79, prescribed safety clause at (b) and (d), Plaintiff's exhibit 9. The mere retention of the right to require adherence to safety regulations or to conduct safety inspections does not impose liability upon the United States. *Lowe*, 466 F.Supp. at 899, 611 F.2d at 77; *Johnston v. United States*, 461 F.Supp. 991 (N.D.Fla.1978), *affirmed*, 603 F.2d 858 (5th Cir.1979); *Accord, LeSeur v. United States*, 617 F.2d 1197 (5th Cir.1980).

 Likewise under Florida law, an employer is not liable to an independent contractor's employees even though they are engaged in inherently dangerous activity, absent an act of negligence by the employer independent of his relationship with the independent contractor. *Florida Power and Light v. Price*, 170 So.2d 293 (1964); *Crawford v. Florida Steel*, 478 So.2d 855 (Fla. 1st DCA 1985). However, in this case the Army owed no duty to Deborah Eisenhut, the breach of which would constitute a cause of action for negligence under Florida law.

ARRADCOM owed Ms. Eisenhut no affirmative duty to take special precaution against the dangers involved in her work. *See Scofi v. McKeon Construction Co.*, 666 F.2d 170 (5th Cir.1982), nor was Ms. Eisenhut an invitee. *Compare, Orr v. United States*, 486 F.2d 270 (5th Cir.1973) (Government owed a duty to plaintiff as invitee on Patrick Air Force Base). *Toole v. United States*, 588 F.2d 403 (3rd Cir.1978) is inapposite because it construes Pennsylvania law which imposes such an affirmative duty on employers of independent contractors.

Furthermore, because the Safety Manual was not applied to the ORI contract, the Army owed Ms. Eisenhut no duty regarding the enforcement of safety regulations, nor did the product quality inspection by ARRADCOM's Quality Assurance Specialist at the ORI plant, without more, constitute an assumption of a duty to enforce

safety regulations or warn of safety violations. *See Skow v. Department of Transportation,* 468 So.2d 422 (Fla. 1st DCA 1985); *Compare, McMichael v. United States,* 751 F.2d 303 (8th Cir.1985) (duty existed where there was continuous presence of three on-site inspectors performing 51 step safety compliance review in addition to inclusion of Safety Manual in the contract).

Finally, it is undisputed that ARRADCOM exercised no supervisory control over Ms. Eisenhut's work at ORI, *See Padilla v. Gulf Power Co.,* 401 So.2d 1375 (Fla. 1st DCA 1981), and that ARRADCOM had no superior knowledge of danger as an owner of premises. *See Horton v. Gulf Power Co.,* 401 So.2d 1384 (Fla. 1st DCA 1981). Thus, under Florida law ARRADCOM had no duty to Deborah Eisenhut based upon one of the recognized exceptions to the general rule that the employer of an independent contractor owes less duties to the latter's employees than to third persons. *Price,* 170 So.2d at 297.

Accordingly, to the extent that the plaintiff's claim is for the negligent failure of the Army to warn Deborah Eisenhut of danger, it fails to state a claim upon which relief can be granted. Furthermore, even if such a claim could be stated under Florida law, it too would be barred by Section 2680(a) because it ultimately attacks the discretionary regulatory authority the government has with respect to the supervision of its contractors' safety procedures. *See Varig Airlines, supra.*

### C.

■ Plaintiff also claims that the government negligently misclassified the hazard factor for composition 119G. Amended Complaint at J, K. However, the gravamen of that claim is that ARRADCOM communicated misinformation—*i.e.,* that 119G was not sensitive or explosive in nature—on which ORI relied, and that, but for the government's misrepresentations, ORI would have taken precautions that would have prevented Deborah Eisenhut's death. Plaintiff's Memorandum Opposing Summary Judgment at 5, 7, 30, 43; Plaintiff's Supplementary Memorandum at 1, 2, 7; Waite Deposition, Vol. I at 118–121; Waite Deposition Vol. III at 15–23, 41–43. Thus, because the plaintiff's damages are attributed solely to ORI's reliance on ARRADCOM's alleged misrepresentation, the claim is barred by the misrepresentation exception to the FTCA, Section 2680(h). *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *Baroni v. United States,* 662 F.2d 287 (5th Cir.1981).

*National Carriers, Inc. v. United States,* 755 F.2d 675 (8th Cir.1985) is inapposite because the claim there was not based solely on misrepresentation, but on other distinct acts of operational negligence which themselves caused damages to the plaintiff independent of those caused by misrepresentation. Likewise, *Aretz v. United States,* 604 F.2d 417 (5th Cir.1979), is distinguishable because the misrepresentation exception, Section 2680(h), was not in issue there. Furthermore, *Aretz* involved a munitions contract which applied the Safety Manual, and which specifically classified the loose pyrotechnic compounds used in the manufacturing process, not just the end item for transportation purposes. The claim was predicated "on the Army's failure to implement its decision to upgrade the classification of pyrotechnic materials," *id.* at 426, not on the plaintiff's reliance on government misinformation. Finally, *Aretz* was also based on a duty under Georgia law that recognized no difference between third persons and employees of independent contractors, and that extended to the manufacturing of the end product, not just the subsequent transportation and storage of the end product. *Id.* at 428–29.

Plaintiff has failed to produce preponderant evidence that damages were suffered independent of ORI's reliance upon the government's alleged misinformation sufficient to allow a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Accordingly, the defendant's motion for summary judgment (document 71) is hereby GRANTED. Clerk will enter judgment.